PUTINSKI *v.* STATE

[No. 234, September Term, 1959.]

2

■■■■■■■■

■■■■■■■■

*Decided June 13, 1960.*

■■■■■■■■

■■■■■■■■

■■■■

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Roger K. Garfink,* for appellant.

*John Martin Jones, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *John W. Sause, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Putinski, the appellant, took a portable television set, a suitcase, a pair of pants and two suits of clothes belonging to his roommates in a rooming house, without their knowledge or consent, and pawned them. He was convicted of larceny by Judge Allen, sitting without a jury, over his contention, which he presses here, that he did not intend to permanently deprive the owners of their property—that is to steal it—so an essential element of the crime of larceny is lacking.

Putinski left a note for his roommates saying he was sorry, that he would send the money and the pawn tickets to them and that he was going to Washington. He immediately pawned the television set and the clothing for about the maximum he could have gotten on them, the trial judge found. He used some of the money to pay the interest due the pawnbroker on pledges he had earlier made of his own property. He gave the pawnbroker a false address. He went to live

at a small hotel. Putinski is a painter, who had been unemployed for some time. About ten days after the taking of the goods he got a job and five days later discovered that all the pawn tickets were missing from his room—those for his own property and those for the stolen property. He, in his words, "walked in brazen" to the pawnbroker to "put a stop" on the pawned articles so a finder of the pawn tickets could not redeem. The police had already "put a stop" on the stolen articles; the pawnbroker called them and Putinski was arrested. He first told the officer he had "borrowed" the things he took but when the policeman, having drawn his admission that it was without the knowledge or consent of the owners, said: "that is, you just stole it," Putinski replied: "I guess that is true." Nevertheless, his defense was, and is, that he always had an intent to return the articles he took and therefore did not steal them.

"Larceny has been defined as the 'fraudulent taking and carrying away of a thing without claim of right, with the intention of converting it to a use other than that of the owner, without his consent.' 2 *Wharton, Crim. Law* (11th ed.)." *Ledvinka v. Home Insurance Co.,* 139 Md. 434, 440.

It is generally held that the intent must be to permanently deprive the owner of his property. Clark & Marshall, *Crimes,* Sec. 12.04 (6th Ed.); Perkins, *Criminal Law,* p. 224; 2 *Wharton's Criminal Law,* Sec. 1096 (12th Ed.); 3 Underhill, *Criminal Evidence,* Sec. 591 (5th Ed.); 52 C. J. S. *Larceny* Sec. 1; 32 Am. Jur. *Larceny,* Sec. 2; Hochheimer, *Crimes and Criminal Procedure,* Sec. 370 (2d Ed.); Annotation 48 A.L.R. 2d 8, 29; compare *Ledvinka v. Home Insurance Co., supra.*

When the accused has taken property to pawn and raise money, the question arises whether his intent was to permanently deprive the owner of it—that is to steal it—or whether the intent was to raise money on it for a time and then return it, for if the thing is taken to be used only temporarily, there may be an absence of intent to deprive the owner of his ownership. The intent of the taker is a question of fact to be decided by the trier of fact. The English cases and those in

4

this country have worked out tests of the intent in such circumstances.

"If a man takes another's goods with intent to pawn them, and does so, he is clearly guilty of larceny if he does not intend to redeem and return them. And he is guilty even if he does intend to redeem and return them, if he does not show ability to do so, or at least a fair and reasonable expectation of ability. If he shows such ability or expectation, it seems that he is not guilty." Clark and Marshall, *op. cit.,* Sec. 12.04, p. 733.

Perkins, *op. cit.,* page 226, says the law is this:

> "To take another's chattel by trespass for the purpose of raising money by pledging it may constitute larceny even if done with an intent to redeem the chattel and restore it to the owner. This is because such a transaction may involve great risk of permanent loss to the owner. By the pledge the trespasser has placed it beyond his power to return the chattel to the owner without first repaying the creditor; and he may be unable to do this. The amount of the pledge, the financial circumstances of the pledgor and the length of time contemplated, are entitled to attention. If the amount of the loan is not large, the intent is to redeem promptly, and there is no reason to doubt the pledgor's ability to redeem, the jury may be warranted in finding the absence of any unreasonable risk of permanent loss by the owner. But one who has wrongfully taken the chattel of another and pledged it, under circumstances which leave his ability to redeem it in doubt, or has pledged it for such an amount as to create a great temptation for him to leave it where it is, has done so with an intent to steal even if at the moment he thinks he will sometime redeem and return it."

See also 2 *Wharton's Criminal Law,* Sec. 1140, p. 1457 (12th Ed.) ; 52 C.J.S. *Larceny* Sec. 27b (3), p. 823; 32 Am. Jur. *Larceny* Sec. 37, p. 929; 52 L. R. A. (N. S.), 1017; Ann. Cas. 1916 C. 71; compare Model Penal Code. Tentative Draft

4, Part II, Sec. 206.6(e), which gives less effect to the claimed intent to redeem and return than do the cases.

The cases support the texts. See *Regina v. Phetheon,* 9 C. & P. 552, 173 Eng. Rep. 952; *Regina v. Medland,* 5 Cox, Crim. Cas. 292; *Regina v. Trebilcock,* 7 Cox, Crim. Cas. 408, 169 Eng. Rep. 1079; *Truslow v. State* (Tenn.), 31 S. W. 987; *Blackburn v. Commonwealth* (Ky.), 89 S. W. 160; *State v. Wallin* (Mont.), 199 P. 285. See also *Fields v. State* (Tenn.), 6 Cold. 524; and *Union Trust Co. of Rochester v. Oliver,* 137 N. Y. S. 525. There is an informative discussion of an intent to replace money wrongfully used by a public officer in *State v. Baxter* (Ohio), 104 N. E. 331.

There was evidence in the case before us which permitted the trier of fact to find criminal intent. The statement in the note left in the room that Putinski was going to Washington, the giving of a false address to the pawnbroker and the move to the hotel showed efforts to hide his whereabouts. His unemployment, and the prior pawning of his own goods, which could only be kept in pawn by using money received from the pledging of the goods taken from the room, indicated no reasonable ability or expectation of ability to redeem.

The appellant contends, on this point, that Judge Allen's finding of guilt was on the basis that Putinski did not have ability to redeem at the time of taking and pledging and that this was erroneous as a matter of law, because only a reasonable expectation of ability to redeem is required. Judge Allen took both factors into account. He said that not only did Putinski have no present ability to redeem, but he had no prospects of ability to do so in the near future, and that this distinguished the case from those in which "the person charged was not at that moment in a position to redeem, [but] there was a present prospect of a future ability of redeeming and that future was in the near future, not a remote indefinite future * * *." He added that to sustain his defense Putinski would have had to show that at the time of pledging the articles he had "a reasonable and fair expectation", by the receipt of money, of soon being able to take them out of pledge and restore them to the owners and this he had failed to show.

The verdict in a non-jury criminal case can be set aside on

the evidence only where clearly erroneous. Maryland Rule 741 c; *Johns v. State,* 221 Md. 456. It is for the trial court, not the appellate court, to be convinced beyond a reasonable doubt of guilt. If the evidence and the proper inferences therefrom were sufficient to warrant the trial judge in reaching the conclusion that the defendant was guilty beyond a reasonable doubt, this Court will affirm. The principal question in the case, that of intent, was one of fact which the trial court determined against the appellant on evidence and proper inferences which, in our opinion, permitted the determination that was reached. *Truslow v. State,* and Perkins, *Criminal Law,* both *supra; Ridley v. State,* 220 Md. 182; *Cooper v. State,* 220 Md. 183.

*Judgment affirmed.*