## SHOREY *v.* STATE

[138, September Term, 1961.]

*Decided January 23, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, and MARBURY, JJ.

*William Carruth* for appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney* and *Charles E. Moylan, Jr., Assistant State's Attorney of Baltimore City* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was tried before a court and jury on charges of rape and burglary, and convicted of both. After a motion for new trial had been overruled by the Supreme Bench of Baltimore City, he was sentenced to death. Since the appeal challenges the sufficiency of the evidence, we state the testimony in some detail.

The victim, a seventy-seven year old woman, was alone in her home early in the morning of May 28, 1960, when she was awakened in her darkened bedroom by an intruder. She tried to placate him by offering him the purse under her pillow, but he raped her, after striking her repeatedly in the face. She called the police as soon as he left the house, and they arrived promptly. She was in a state of shock, and there was blood on the bed and on her nightclothes. She told the police the intruder was a young negro who had on a white shirt and a strap on his wrist. She also mentioned a zipper on his fly which had cut her. She was treated at a hospital for bruises of the eye and nose, and examined in the genital area by Dr. Eleanor Scott, the police physician. Dr. Scott testified to lacerations on the inside of the vaginal walls. The victim told Dr. Scott she had been forcibly raped. There was testimony that the victim had type A blood and the appellant had type AB blood. When he was arrested, blood of the victim's type was found on the leg of his trousers and on his shirt, and blood of his type was found on the victim's bed and nightgown. Spermatozoa were found on the fly area of the appellant's trousers.

On information received, the police went to the house where the appellant was living with his married sister, on the night following the crime. This home was within a block from the home of the victim. They were admitted without protest and went to the basement where Shorey was sleeping. He was wearing a strap on his wrist. His clothing was lying across a chair, a white shirt with blood stains on it and a stained pair of trousers. He accompanied the officers to the station house for questioning. They took the stained clothing with them for examination. He first stated that he had had intercourse with a girl in a house on St. James Street, but when the police took him to St. James Street, he was unable to identify the house or produce the girl. He was then given breakfast by the police.

After lunch, he agreed to give a statement. In it, he said he had been in a tavern drinking and passed out when he got home. When he came to, he was in "the dining room of this house." He ran out the gate into the alley, and realized it was a house on the northwest corner of Bradford Street and Lanvale Street. He threw away a soft object he found in his hand. When he got home he noticed blood on his coat. The next morning, he saw blood on his shirt and pants. He put on his work clothes and went to work. When he again returned home his sister told him the white lady on the corner had been assaulted. "So I figured in some way I had something to do with it because I remembered waking up in this white lady's house on the corner and because I had blood on my clothes."

The appellant took the stand and denied that the statement he had given was either true or voluntary. He claimed that he was drunk at the time of the crime. He attempted to explain the blood on his clothing and the spermatozoa on his fly by claiming that he had intercourse in a taxicab with a girl whose name he did not know. He testified that after this incident he went to several taverns where he talked to various persons, several of whom appeared as defense witnesses. None of these alibi witnesses observed any blood on his clothing, and the times they mentioned were earlier than the time the crime was reported.

We think the evidence was legally sufficient to sustain the conviction. The fact that the victim could not positively identify the accused as her assailant is not controlling. Inferences may be drawn from the strap on his wrist, the similarity of clothing, the correspondence between blood stains and blood types, and the other circumstances, that he was in fact the assailant. Cf. *Smallwood v. State,* 216 Md. 16, 19. The jury was not required to accept his alibi. *Shockley v. State,* 218 Md. 491, 497. Cf. *Kier v. State,* 216 Md. 513, 519. There was sufficient evidence that the victim was raped. She had been married and had five children. The record suggests no doubt that she knew the meaning of the word. The medical testimony fully supported her story, and indicated that penetration occurred.

There is further corroboration of the appellant's identity in his admission that he was in the victim's home on the night in question. His claim that the statement was not given voluntarily is denied by all the police officers who were present during the whole time of his detention. Cf. *Ralph v. State,* 226 Md. 480, and cases cited.

The appellant contends that the fact that he was not given a preliminary hearing is reversible error. But we have consistently held that a preliminary hearing is not necessary before a valid indictment can be obtained. *State ex rel. Sanner v. Warden,* 191 Md. 743, 744; *Kirby v. Warden,* 214 Md. 600, 601. Failure to have a preliminary hearing does not invalidate an indictment. *Hardesty v. State,* 223 Md. 559, 563.

The appellant further contends that he was arrested without a warrant and that the articles of clothing taken from his room were improperly admitted in evidence. In arresting a person whom the police may reasonably suspect of committing a felony, they may do so on the basis of information received from a third person. See *Mulcahy v. State,* 221 Md. 413, 421-423, and cases cited. Cf. *Drouin v. State,* 222 Md. 271, 278; *Price v. State,* 227 Md. 28, 175 A. 2d 11, 14. As an incident of a lawful arrest, they may search his person and the immediate premises.

It may well be, as the State contends, that this was not even a case of arrest, but merely an accosting, since the police

officers were admitted without objection to the sister's house and Shorey agreed to accompany them to the station house. Moreover, the blood stained clothing was then in plain view, and no search was necessary to discover it. In these respects the case seems distinguishable from *Mapp v. Ohio,* 367 U. S. 643, which, for the purpose of this case we shall assume to be applicable in point of time. There the entry was forcible and over the protest of the tenant, and an extended search was necessary to discover the incriminating evidence. But the complete answer is that there was no objection in the trial court on the ground of illegal arrest. *Young v. State,* 220 Md. 95, 99, cert. den. 363 U. S. 853. Nor was there any objection to the introduction in evidence of the articles of clothing, *Young v. State, supra; Madison v. State,* 200 Md. 1, 8; *Lenoir v. State,* 197 Md. 495, 506. The majority opinion in the *Mapp* case seems to recognize (p. 659, note 9) that State procedural requirements to raise or preserve the question may still be respected, even where it is claimed that the Fourteenth Amendment is violated by the introduction of illegally obtained evidence in a State prosecution.

Finding no merit in any of the points presented, we must affirm the judgment.

*Judgment affirmed.*