## BELTON v. STATE

[No. 174, September Term, 1961.]

18

Decided February 26, 1962.

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

. Milton B. Allen, for appellant.

Thomas W. Jamison, III, Assistant Attorney General, with whom were Thomas B. Finan, Attorney General, and Saul A. Harris and George J. Helinski, State's Attorney and Assistant State's Attorney, respectively, of Baltimore City, on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The primary question in this case is whether the evidence obtained as a result of an admittedly unlawful search and seizure had been rendered inadmissible by the decision of the Supreme Court of the United States in Mapp v. Ohio, 367 U. S. 643 (1961).

On January 25, 1961, the narcotic squad of the Police Department of Baltimore City, in response to a telephone call, went to 629 Dover Street and attempted to force their way into the house. When, in order to forestall a breaking down of the door, someone on the inside released the chain lock, the officers rushed to the second floor bathroom and, on opening the door, found the defendant. An examination revealed that his right forearm was bleeding, and an improvised syringe (an eye dropper) was found on the floor. The defendant was placed under arrest immediately and then searched. No illegal evi-

dence was found on his person, but when the premises were searched certain narcotics paraphernalia were found. At the time the defendant was a guest of his aunt who owned the house.

All of the occupants of the premises, including the defendant, were taken to police headquarters, where they were questioned. On the day following, in a statement made to Lt. Jacob Simonsen and Capt. Joseph Carroll in the presence of another officer, the defendant admitted that he had made a bus trip to Washington, purchased a ten dollar deck of heroin there and returned to the home of his aunt. On his return he placed the loose heroin in capsules, and had used the contents of two of them before the police came. When he heard the police coming, he ran to the bathroom, closed the door and threw the remaining capsules and hypodermic needle (but not the eye dropper) into the toilet and flushed it.

At the trial before a jury the paraphernalia seized in the search was admitted in evidence over the objection of the defendant. The State, in its case in chief, also produced Lt. Simonsen, who, without objection, related the details of the defendant's statement to the police as to the purchase of heroin and the possession of narcotics paraphernalia. But when the defendant testified in his own behalf, he denied making the statement. Whereupon the State called Capt. Carroll in rebuttal and he—over an objection that the testimony would be merely cumulative to, or corroborative of, that already offered in chief—also testified as to the oral statement made by the defendant to the police.

The jury convicted the defendant for the possession and control of a narcotic drug and the possession of narcotics paraphernalia, and found that he was a second offender. This appeal is from the judgment and sentence entered on the verdict.

In addition to the question as to the admissibility of the tangible evidence seized in the search, the appellant further contends that he had standing to object and that the judgment appealed from is not final. There is also a minor contention that it was error to admit the rebuttal testimony over objection.

In *Mapp. v. Ohio, supra,* the Supreme Court, in unequivocally declaring that the federal rule excluding illegally seized evidence is of constitutional origin, held that "all evidence obtained by searches and seizures in violation of the Constitution [of the United States] is, by that same authority, inadmissible in a state court." The rationale of the holding was, of course, based on the concept that the right of privacy guaranteed by the Fourth Amendment is enforceable against the states through the due process clause of the Fourteenth Amendment. In so holding, the Court specifically overruled *Wolf v. Colorado,* 338 U. S. 25 (1949), insofar as that decision had left to the states a choice of accepting or rejecting the federal exclusionary rule announced in *Boyd v. United States,* 116 U. S. 616 (1886), and made obligatory in *Weeks v. United States,* 232 U. S. 383 (1914).

To fully appreciate the possible impact of the *Mapp* decision in those states (including Maryland) that had declined to adopt the *Boyd* doctrine as it was given force in *Weeks,* it may be well to briefly outline the history of the admissibility of evidence obtained as the result of an unreasonable search and seizure. At common law an illegal search and seizure was a collateral matter—for which a civil action for damages could be instituted—that did not affect the admissibility of the evidence thus obtained. See *Entick v. Carrington,* 19 Howell's State Trials, col. 1029 (1765). In the United States, inasmuch as the Fourth Amendment was not regarded at first as affecting the common law doctrine, that rule was followed by the federal government as well as the states for many years. But in 1886 in *Boyd v. United States, supra,* the Supreme Court rejected the common law concept with regard to a search and seizure made in violation of the Fourth Amendment. And, in concluding that the Fourth and Fifth Amendments were so related historically that they had to be considered together, the Court held that evidence seized in an unconstitutional search and seizure under the Fourth Amendment was excludable under the Fifth. This decision, however, since it was addressed only to the federal government, left the states (as previously stated herein) to follow either the *Boyd* doctrine or the common law rule as they saw fit. Mary-

land chose to follow the latter. See *Lawrence v. State,* 103 Md. 17, 63 Atl. 96 (1906). After 1914, when the *Boyd* doctrine was reaffirmed and made effective in the *Weeks* case, a number of states joined the ranks of the adherents to the federal exclusionary rule, but this Court, in *Meisinger v. State,* 155 Md. 195, 141 Atl. 536 (1928), again declined to go along and reaffirmed its adherence to the common law rule in the trial of all criminal offenses. However, the broad scope of the *Meisinger* decision was somewhat curtailed when the Legislature, by enacting the Bouse Act (Chapter 194 of the Acts of 1929), now codified as Code (1957), Art. 35, § 5 (a), prohibited the use of evidence procured "by, through, or in consequence of any illegal search or seizure" or by "any search and seizure prohibited by the Declaration of Rights" in the trial of misdemeanors. But this exclusionary rule was never extended to include felonies. Moreover, the rule as to misdemeanors, almost from its inception, has not been applicable to all areas of the State and to all nonfelonious offenses. And, in addition to repeated expansion of the geographical exceptions with respect to prosecutions for violations of the gambling, lottery and alcoholic beverage laws, there are now state-wide exceptions with respect to prosecutions for unlawfully carrying concealed weapons and for violations of the narcotic drug laws. The narcotic drug exception is now codified as Code (1957), Art. 27, § 299. All of these exceptions, of course, had the effect of restoring the common law rule as to the admissibility of illegally seized evidence in those geographical areas to which a particular exception is applicable. For a more comprehensive exposition of the historical setting between *Entick v. Carrington* and *Mapp v. Ohio,* (and the law generally as to evidence seized in an unlawful search), see Michener, *Unreasonable Searches and Seizures and the Admissibility of Evidence in Maryland,* 21 Md. Law. Rev. 321: Allen, *Federalism and the Fourth Amendment: A Requiem for Wolf,* 1961 Supreme Court Review 1. See also the comment, *Admissibility of Illegally Seized Evidence—The Federal Exclusionary Rule—A Historical Analysis,* 38 U. of Detroit L. J. 635.

Prior to the decision in *Wolf v. Colorado, supra,* in 1949,

in which the conviction of a defendant in a state court, on evidence obtained in an illegal search, was affirmed, the Supreme Court had not specifically held that the prohibition against unreasonable search and seizure guaranteed by the Fourth Amendment might be made applicable to the states through the Fourteenth. Moreover, in *Wolf,* although there was a warning that the Fourteenth Amendment prohibited an unreasonable search and seizure by a state officer, there was at least an implication that the federal exclusionary rule would not be imposed on the states in the immediate future. And the Court deemed it appropriate to point out in effect that the rule was not a command of the Fourth Amendment but was a judicially created rule of evidence that Congress might negate. And five years later, in *Irvine v. California,* 347 U. S. 128 (1954), another case involving the conviction of a defendant in a state court on illegally seized evidence, the Supreme Court, citing the *Wolf* case, declared (at p. 132) that "in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure."

Consistently before the decision in the *Wolf* case, this Court refused to follow the Supreme Court on a question of search and seizure, and just as consistently after that decision, despite its clear warning and yet in reliance on its apparent assurance that the danger of a reversal (of *Wolf*) was not imminent, this Court continued to apply the common law rule as to the admissibility of illegally seized evidence in the trial of all criminal offenses other than those misdemeanors to which the exclusionary rule of the Bouse Act was still applicable. Other than this, there was further and positive assurance that the course this Court had taken in adhering to the common law doctrine was correct when the Supreme Court in *Salsburg v. Maryland,* 346 U. S. 545 (1954), affirmed the decision of this Court in *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280 (1953), in which we had held that illegally seized evidence was admissible against the defendant in a prosecution for a violation of the gambling laws.

This then was the state of the law in this State on April 11, 1961, when the defendant in this case was convicted and

sentenced. But as a result of the *Mapp* case decided on June 19, 1961, there can be little doubt in a case such as this—where the State does not deny that the entry into the house was without the consent of the owner and the defendant, that the search and seizure was without a search warrant, that the arrest was without a state warrant, and that the arresting officer did not witness a violation of the narcotic drug laws prior to the arrest of the defendant—that the "double standard" as to the admissibility of evidence illegally seized in prosecutions for a violation of the narcotic drug laws has been effectively eliminated. A further consequence is that the exception to Art. 35, § 5 (a), *supra,* created by Art. 27, § 299, *supra,* has been rendered unconstitutional.

This brings us to the question as to whether the defendant, who was an invitee on the searched premises, had standing to object to the admissibility of the illegally seized evidence. In *Jones v. United States,* 362 U. S. 257 (1960), the Supreme Court, in relaxing the former strict requirements as to standing to object, held that the right was available to anyone legitimately on the premises unlawfully searched. And while it is true that in *Oden v. State,* 222 Md. 325, 159 A. 2d 867 (1960), decided after the *Jones* case, we refused to liberalize the standing-to-object requirements so as to permit the defendant, who was a passenger in an automobile that had been searched, to make an objection, we think the defendant in this case had standing to object. As we see it, the right to object in a case such as this, where the State proposed to use the illegally seized evidence against a defendant who was rightfully on the searched premises, is another necessary result of the *Mapp* decision.

Now as to the finality of the judgment. It is true that the defendant was convicted on April 11, 1961, and that the *Mapp* case was not decided until June 19, 1961. But it is also true that judgment on the verdict—sentencing having been suspended pending final disposition of the motion for a new trial—was not entered until July 3, 1961, and that the judgment appealed from does not become final until the rendition of the decision in this case. We are therefore bound to apply the exclusionary rule in compliance with the command

of the *Mapp* case, and we shall do so. See *People v. Loria,* 179 N. E. 2d 478 (N. Y. 1961). Cf. *Shorey v. State,* 227 Md. 385, 177 A. 2d 245 (1962); *Hall v. Warden of Maryland Penitentiary,* 201 F. Supp. 639. (D. C. Md. 1962); and *State v. Valentin,* 174 A. 2d 737 (N. J. 1961).

For the reasons stated herein, we are compelled to hold that the judgment must be reversed, and the case remanded for a new trial; and as the case is to be retried it becomes unnecessary to consider the question as to the admissibility of rebuttal testimony.

> *Judgment reversed and case remanded for a new trial; the mayor and city council of Baltimore to pay the costs of this appeal.*