## EDWARDSEN *v.* STATE

[No. 210, September Term, 1962.]

*Decided April 16, 1963.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*James A. Ehrhart,* for appellant.

*R. Randolph Victor, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Abraham L. Adler, State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City, on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Edward R. Edwardsen, who is no stranger to this Court (see *Edwardsen v. State,* 220 Md. 82, 151 A. 2d 132) and the trial courts of this State according to his statement of his record, was found guilty of statutory burglary in the Criminal Court of Baltimore by a judge, sitting without a jury. After sentence, he noted his appeal.

He poses four questions in his brief, but in the view we take of the case, it will be necessary to answer but one: Did the trial court err in admitting certain evidence obtained as the result of an illegal search and seizure?

On the morning of February 14, 1962, the operator of the Ernst Furniture Company discovered that his store had been burglarized, and twelve to fifteen small transistor radios, valued at over $100, and about $20 in cash, were missing. Entrance to

the store had been gained through a trap door on the roof. The appellant lived adjacent to the burglarized premises in an apartment house with one Mary Hiltz, to whom he was not married. The second floor of the apartment house leads to a landing on a fire escape, and from that landing, it is possible to step on the roof of the furniture store. The record discloses that the evidence down to this point was received in the usual and customary manner, but, from this point on, the record is very unsatisfactory in that it fails to relate sufficient details so that we can determine what really transpired at the trial.

After receiving notification that the burglary and larceny had occurred, two investigating officers of the Police Department went to the furniture store and examined the premises. They then "received certain information which took [them] to a certain area [where appellant worked, some ten to fifteen blocks from where he lived] where [they] were looking for a certain automobile, the information of which we had received." They "spotted" an automobile with no tags on it parked on a lot, and from there they went to appellant's employer and talked with him. The attorney for the State admonished the officer not to say what the employer told him, but asked the officer: "Then acting upon that information which you received [from the employer], you did something, did you?" The officer replied by stating that "acting upon the information" he asked the employer had he seen the appellant there, and the employer said that he had. The officers left the employer and a few minutes thereafter, while walking along the street, they "spotted" appellant walking down the far side thereof. They "called to him to stop," and one "stepped out and told him that he was under arrest." They then searched him and found a set of keys in his pocket. Defense counsel objected to the officer's testimony relative to the finding of the keys, but his objection was overruled.

At this point, we leave, temporarily, the chronological order of the taking of the testimony. During the course of the second officer's testimony, after the owner of the store and one officer had testified and after the objection to the admissibility of the keys, a "paper" was handed to the judge and he was requested to read it. The record states the "paper was then

handed to and perused by the court." A conference was then had at the bench between the court and counsel; the details of which are not related. Whereupon the court said, "I will have the clerk check on that [apparently some statement made by the appellant] during recess," which was then taken. After recess, the judge announced, "I find from a file handed me by the clerk that [appellant] did file a paper in connection with another matter." There then followed another conference at the bench; after which the court said, "I find there was probable cause to place the defendant under arrest and therefore I will deny the motion [made by the appellant] just prior to recess." The contents of the motion is not in the record, but the above statement of the judge impels an inference that the motion was in the nature of one to suppress certain evidence (the set of keys and several radios and a jacket found in the automobile as we shall soon see), on the ground that his arrest was illegal; hence the subsequent searches of his person and the motor vehicle in his care and custody were unlawful, and the evidence obtained thereby inadmissible.

The State argues with considerable soundness that some of the evidence was "in" before the motion was made, and a part of it was testified to by other witnesses without objection, but because of the unusual and unfortunate condition of the record, we shall consider that the above indicated motion to suppress was made and the propriety of its denial is properly before us. (It will be noted that the record fails to make it clear where and when the "paper" was "filed.")

We had gotten to the point in relating the facts where the objection to the keys was overruled. Continuing therewith, the appellant and the keys were taken to the parked automobile. One of the keys fit the ignition keyhole, and, with its assistance the car's engine was started. A search of the car revealed some six transistor radios and a jacket, which appellant stated belonged to him.

We have had occasion so recently and so frequently to consider and expound the law relative to what constitutes a legal arrest and an incidental search thereafter, it will be unnecessary to elaborate thereon unduly in this opinion. The larceny involved herein is a felony. In *Belton v. State,* 228 Md. 17, 178

A. 2d 409, we observed the mandate laid down in *Mapp v. Ohio*, 367 U. S. 643, to the effect that evidence obtained as the result of an unconstitutional search and seizure should not be admitted in a State criminal prosecution. In *Mulcahy v. State*, 221 Md. 413, 158 A. 2d 80, Judge Horney, for the Court, collected the authorities and stated succinctly and well: "In this state it has long been settled that a peace officer may arrest without a warrant, provided there were reasonable grounds to believe at the time of the arrest that a felony had been committed *and that the person arrested had committed the offense* [emphasis added]." He pointed out further that when the arrest is for a felony, the "reasonable grounds," or "probable cause," may consist of facts and circumstances within the officer's knowledge or of which he has reasonably trustworthy information; and, if the arrest be lawful, it is permissible, as an incident to the arrest, to search the person of the suspect and take into custody tangible evidence of the crime whether found "upon his person or within his present or immediate possession." [1] Conversely, if the officer fails to have "probable cause" to make the arrest, the arrest is unlawful, and a search made as a result thereof is likewise unlawful.

In the instant case, it is possible, if indeed not probable, that the officers had reasonable grounds to believe that the appellant was the person who had committed the larceny (the "probable cause" for believing the larceny had been committed is conceded), but the record is devoid of any such showing. The officers testified they did not know where the appellant was living at the time of the arrest, and they had not seen the radios in the automobile until after the arrest. Neither the appellant nor the automobile was shown to have been in the vicinity of the burglarized premises, and the officers did not relate any of the information upon which they based their belief that he had committed a criminal offense. This leaves the record as showing merely the bare fact that the officers "received certain information," and as a result thereof they arrested the appellant. The information should have been given in evidence so that the

---

1. It was shown that the automobile belonged to Mary Hiltz, and the appellant had been known to use it on previous occasions.

trial judge could determine whether the officers had, at the time of the arrest, reasonable grounds to believe that the appellant had stolen the purloined property, and so that we may intelligently review such determination. We hold that there was an insufficient showing of probable cause to make the arrest; consequently, the keys, the radios and appellant's jacket should not have been admitted into evidence.

*Judgment reversed and case remanded for a new trial.*