## YOUNG *v.* STATE

[No. 218, September Term, 1963.]

*Decided March 10, 1964.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

Submitted on brief by *Bruce C. Williams* for the appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Marvin H. Anderson, State's Attorney for Anne Arundel County,* and *Julian B. Stevens, Jr., Deputy State's Attorney,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

We are confronted in this case with a question as to whether or not a police officer acted lawfully when he arrested the defendant without a warrant, and confiscated articles of property from an alleged accomplice, which were admitted as evidence against the defendant on his trial for larceny.

There is no dispute as to the facts concerning the arrest and seizure. In the evening of December 7, 1962, a security officer at a department store in Glen Burnie was notified by a store guard that "he had observed two suspects in the parking lot checking a number of cars [and] trying the door handles." The "suspects" were described simply as "two colored males."

Remembering that he had earlier seen a county police officer (who was off duty at the time) shopping in the store, the security officer had him paged. When the police officer appeared, the security officer relayed to him the report he had received from the guard, and, together, they went out to the sidewalk in front of the store, where the police officer saw two colored men "walking through the [rows of] cars." The defendant,

Robert Young, was walking thirty to fifty feet ahead of Joseph Anderson, who seemed to be following the defendant and had both arms full of "articles, packages [and] clothing." The defendant walked up to his car, a Buick, opened the trunk, and then, seeing the officers, "slammed the trunk lid back down and began walking off rapidly." Anderson just stood at the rear of the Buick holding the packages.

The security officer went to Anderson and the police officer went after the defendant, caught up with him, and, showing him his badge, told him he was under arrest (according to the police officer he arrested the defendant "for suspicion of larceny, investigation actually") and instructed him "to come back to the car where [the other man] was." From there both Anderson and the defendant (along with the parcels) were taken to an office in the store for questioning.

Under questioning, the defendant "denied any knowledge of the packages," but Anderson stated that he and the defendant had broken into a car on the parking lot and taken the parcels from it, and offered to point out the vehicle to his interrogators. He led them to a station wagon, the right wing-window of which had been broken and pried open. Other packages were lying on the parking lot along side of the station wagon. The owner of the station wagon, having been located, identified the parcels as his, and a list of the articles and their values was made of those Anderson was carrying, and, presumably, also those found beside the station wagon. The total value, according to the list, was $179.10. There is nothing in the record to indicate the value of such of the articles Anderson had in his possession when the defendant was arrested.

Neither Anderson nor the defendant took the stand to testify in their own behalf, but the defendant objected to the admissibility of the list and value of the stolen articles as evidence against him.

The defendant, tried by the court without a jury, was convicted of felonious larceny and sentenced to two years in prison. On appeal, the questions presented are: (i) whether his arrest was lawful; (ii) whether the evidence used to convict him was legally obtained; and (iii) whether the evidence was sufficient to convict him of larceny.

## (i) and (ii)

The contention of the defendant is that, if the arrest was unlawful, then the articles of property seized as a result of the arrest were illegally obtained and should not have been used as evidence against him. We agree. For, if in fact the arrest of the defendant was not lawful, it is clear that the articles seized by the police (or a list thereof and their values) were inadmissible as evidence over the objection of the defendant. *Belton v. State,* 228 Md. 17, 178 A. 2d 409 (1962) ; *Mapp v. Ohio,* 367 U. S. 643 (1961).

Was the arrest of the defendant unlawful? We think it was.

Since the police officer did not have a warrant when he arrested the defendant, the applicable rule is, as stated in *Mulcahy v. State,* 221 Md. 413, 421-422, 158 A. 2d 80 (1960), that the officer lacked authority to make the arrest unless he had reasonable grounds or probable cause to believe that a felony had been or was being committed and that the person arrested had committed or was committing the offense. See also *Edwardsen v. State,* 231 Md. 332, 336, 190 A. 2d 84 (1963), and *Bowler v. Warden, Maryland Penitentiary,* 219 F. Supp. 25, 27 (D. Md. 1963). As was pointed out in *Mulcahy* and *Edwardsen, reasonable grounds* or *probable cause* exists when the facts and circumstances within the knowledge of the officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious man believing that a felony had been committed.

The only information that the police officer had before going to the parking lot was that the suspects were "two colored males" and that they were "trying the door handles" of automobiles parked on the lot, which, at most, was a misdemeanor. There is no reason to doubt the reliability of the information the police officer had received, but it is apparent that the description of the men and their actions was too indefinite and uncertain for the police officer to have had probable cause to believe that the men he subsequently saw in the lot were the same persons that had been reported to him by the guard: the record shows that he did not. When he was asked on cross-examination whether he knew that the two men he saw on the lot "were the same men the guard at the door was talking

about," he frankly replied "no sir." Moreover, when the police officer went out to the parking lot to see for himself what was going on, the only additional knowledge he acquired was that a colored man—walking through the rows of parked cars followed by another colored man carrying packages in both arms —went to one of the automobiles, opened the trunk, slammed it shut and walked away rapidly. But this additional knowledge, even when coupled with the information he already had, was not enough in our opinion to lead a reasonably cautious man to believe that a larceny was being or had been committed, the essential elements of which, as stated in *Putinski v. State,* 223 Md. 1, 3, 161 A. 2d 117 (1960), are the "fraudulent taking and carrying away of a thing without a claim of right, with the intent of converting it to a use other than that of the owner, without his consent." Compare the circumstances in this case with those in such cases as *Price v. State,* 227 Md. 28, 175 A. 2d 11 (1961) ; *Williams v. State,* 226 Md. 614, 174 A. 2d 719 (1961), *cert. den.* 369 U. S. 855 (1962) ; and *Edwards v. State,* 196 Md. 233, 76 A. 2d 132 (1950), in all of which it was held that the police had reasonable grounds or probable cause to make the arrests. See also *Shorey v. State,* 227 Md. 385, 177 A. 2d 245 (1962). Here, however, the police officer did not know that a felony had been committed at the time of the arrest and what he saw did not amount to a misdemeanor.

Although it was said in *Price v. State, supra,* at p. 33, that "flight, though not conclusive, is usually evidence of guilt"— see also *Tasco v. State,* 223 Md. 503, 165 A. 2d 456 (1960) and *Clay v. State,* 211 Md. 577, 128 A. 2d 634 (1957)—there must exist other apparent circumstances upon which to base a reasonable assumption of guilt which was lacking here. In addition to this, in the cases last cited, the defendants literally ran from the police or scene of the crime, while in the present case the defendant just walked away rapidly.

At the trial, the police officer described the actions of the defendant "as being suspicious." The phrase seems to accurately sum up the activity the officer had observed, which, not improbably, and indeed, reasonably, could have been the actions of an innocent person. In any event, there "must be more than mere suspicion" to support a reasonable belief of guilt. *Price*

*v. State, supra,* p. 33; *Braxton v. State,* 234 Md. 1, 197 A. 2d 841 (1964). See also *Brinegar v. United States,* 338 U. S. 160 (1949) ; 5 Am. Jur. 2d, *Arrest,* § 45; and 4 *Wharton's Criminal Law and Procedure* (Anderson ed. 1957), § 1612.

We hold that the arrest of the defendant was unlawful and that the evidence used to convict him was inadmissible.

(iii)

Because of our holding on the first and second points, there is no reason to consider the third point.

> *Judgment reversed and case remanded for a new trial.*

SYBERT, J., filed the following dissenting opinion.

I believe that when the police officer arrested the appellant he had probable cause to believe that either a felony or a misdemeanor was being committed in his presence, namely, the larceny of goods of a value either above or below $100.00, and that the appellant was a participant in the crime. It is elementary, of course, that the officer could arrest for a crime, regardless of its grade, if committed in his presence.

The accumulated factors present prior to the actual arrest supplied the probable cause, in my opinion. The police officer —within minutes of the fact—received reliable information that two colored men were in the parking lot "checking a number of cars [and] trying the door handles." Such activity, with respect to one automobile, would mean little or nothing—the men might be in lawful possession of that car ; but, directed at several vehicles, such activity could only induce a reasonably cautious person to believe that the tamperers intended to steal either an automobile or such valuables as they might find in one.

When the police officer and the security officer emerged from the store they saw two colored men (who later proved to be the appellant and his co-defendant, Anderson) on the parking lot, about 75 feet from the building. Anderson had "both arms loaded with all sorts of articles, packages, clothing." There were so many articles, the police officer testified, that Anderson could

not possibly have loaded himself. He appeared to be following the appellant, who was walking thirty to fifty feet ahead. The men were threading their way across the rows of parked cars, not down an aisle between the rows. The aisles led away from the store, and the police officer testified, without objection, that if Anderson "had been in the store buying articles he would have been walking away from the store," instead of parallel to it, as he was. This fact would support a reasonable inference that the articles had been obtained from one of the cars parked on the lot.

It might be argued that up to this point the officers only had reason for suspicion that a crime was being committed in their presence. But what happened next, added to the facts already recited, afforded reasonable ground, in my estimation, for their belief that they were witnessing the asportation of goods that had just been stolen with the complicity of the appellant. The latter (who was carrying nothing whatsoever), followed by the burdened Anderson, walked up to his own car and opened the trunk. Then, looking up, he saw the officers, slammed the trunk closed, and walked off rapidly, literally leaving Anderson "holding the bag." Thus, the appellant tagged himself as an accomplice. The arrest followed.

I think that the grounds for making the arrest were at least as reasonable as were the grounds for the arrest in the case of *Price v. State,* 227 Md. 28, 175 A. 2d 11 (1961), which case is sought to be distinguished in the majority opinion herein. In that case police officers, responding to a call about a prowler on a bitterly cold night, found the defendant in the vestibule of an apartment residence, with marks which were said to look like pry marks on the inner door, although no implement was observed or found on the defendant or in the vestibule. Pointing up the weight that may be attributed to flight, Chief Judge Brune's opinion for the Court said (at p. 33 of 227 Md.) :

> "When the police officers found the appellant in the vestibule, they were there in response to a call about a prowler * * *, they were aware of the very early hour of the morning, the marks on the door looking like pry marks were visible and they found the appel-

lant at and more or less facing the inner door. These facts plainly gave the officers good cause to question the appellant as to why he was there and what he was doing. Instead of explaining, he muttered something and bolted immediately. Flight, though not conclusive, is usually evidence of guilt. * * * With flight added to the other facts already apparent to the officers, even if not before (and as to the prior situation we express no opinion), the officers, we think, had probable cause to believe that the appellant had just been engaged, in their presence, in committing or attempting to commit burglary."

Judge Brune also observed (at pp. 33-34 of 227 Md.) that *Brinegar v. United States,* 338 U. S. 160, shows that probable cause "means a reasonable ground for a belief of guilt, which is less than evidence which would justify condemnation or conviction, but must be more than mere suspicion. 'Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' (338 U. S. 175-176)."

In the case before us, I think the facts existing at the time of the arrest mounted up to more than a mere suspicion of guilt on the part of the appellant, and were sufficient to justify a reasonably cautious person in believing that an offense, participated in by the appellant, was being committed. I don't think the speed of the appellant's flight is significant—he tried to get away.

Asportation is a necessary and integral part of larceny. *Putinski v. State,* 223 Md. 1, 3, 161 A. 2d 117 (1960); Hochheimer's, *Criminal Law* (1911), sec. 68; 2 Bishop, *Criminal Law,* (9th Ed.) sec. 794.1. In fact, prosecution for larceny may be had in any jurisdiction in which the asportation occurs. *Worthington v. State,* 58 Md. 403 (1882); Hochheimer, *supra,* sec. 113. Asportation of goods just stolen is what happened in the presence of the officers in the instant case. I think that the arrest of the appellant was lawful, that the articles

134

taken from the automobile were properly admitted in evidence, and that all the evidence was sufficient to support the conviction of the appellant. I would affirm.