MURRAY *v.* STATE

[No. 4, September Term, 1964.]

*Decided October 22, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Leonard J. Kerpelman* for appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Robert V. Lazzaro, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

In this prosecution for a violation of the narcotic drugs statute, the questions on appeal relate to the legality of the arrest of the defendant (Joseph Murray) and the immediate search of his person for narcotics, the exclusion of medical testimony concerning the incurability of narcotics addiction, and the legality of the punishment of the defendant as a third offender.

In the evening of July 4, 1963, an officer of the narcotics squad of Baltimore City received information from an informer (Ronald McCloud) that the defendant was engaged in the sale of heroin in the vicinity of Riggs Avenue and Calhoun and Winchester Streets. The officer to whom the information was given had known the defendant for ten years and knew that he was a prior narcotics violator. From time to time other persons had also given information to the narcotics squad concerning the activities of the defendant, the last of such information having been received six months previously.

Several hours after the information was received from the informer, three narcotics officers proceeded to the area designated by him. There they observed the defendant walking along Calhoun Street. He fled when he saw the officers, but was apprehended after a short pursuit. An immediate search of his person disclosed four glassine bags of heroin.

The officers believed the informer to be a reliable person because on another occasion three years before he had supplied information concerning a narcotics violator which proved to be accurate. He had not given the police any other information in the meantime because he had been in prison. When he was called as a witness at the trial, the informer denied having given the police any information concerning the defendant. The officers, however, in seeking out the defendant, stated that they were relying on the other knowledge they had as well as on the information supplied by the informer.

(i)

The defendant, asserting that his arrest was without probable cause, contends that the coincidental search of his person and seizure of the heroin were unlawful. The claim is that

there was a lack of probable cause because the police officers could not reasonably have considered the statements of the informer to be trustworthy. He relies on the fact that the informer denied having given any information concerning the defendant and had supplied information on only one other occasion three years before as tending to prove the unreliability of the informer and therefore a lack of probable cause for the arrest. The defendant, citing *Draper v. United States,* 358 U. S. 307 (1959), and *Wong Sun v. United States,* 371 U. S. 471 (1963), both of which decided questions concerning probable cause for arrest and a coincidental search and seizure on information supplied by an informer, argues that the search and seizure in this case were not lawful within *Draper* and were illegal within *Wong Sun.* The contentions are without merit.

Whether the search and seizure were lawful depends, of course, on whether or not the arresting officers had reasonable grounds or probable cause "to believe at the time of the arrest that a felony had been committed and that the person arrested had committed the offense." *Mulcahy v. State,* 221 Md. 413, 421, 158 A. 2d 80 (1960), and cases cited therein. See also *Edwardsen v. State,* 231 Md. 332, 190 A. 2d 84 (1963). Recently, in *Young v. State,* 234 Md. 125, 129, 198 A. 2d 91 (1964), we had occasion to reiterate that reasonable grounds or probable cause "exists when the facts and circumstances within the knowledge of the officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious man believing that a felony had been committed."

In *Draper,* where the information received from a reliable informer (who had given reliable information on prior occasions) proved to be accurate as to the description of the narcotics offender, his whereabouts and his possession of heroin, it was held that probable cause for arrest existed. In *Wong Sun,* where the information relied on was from an untested source and merely invited the officers to roam along a street in search of a laundry where a narcotics offender was said to be present and where the officers, upon finding the laundry, made no attempt to ascertain if the person who answered the door and who

was subsequently arrested was the person referred to by the informer, it was held that there was a lack of probable cause.

In the case at bar, we think the totality of the facts and circumstances to the effect that the defendant was known to the police as a narcotics violator; that information as to his illicit activities had been received from other, though untested, sources; and that information had been supplied by an informer, who on a prior occasion had given the police accurate information, and on this occasion had directed them to the place where the defendant was found, coupled with the fact that the defendant fled when he saw the police approaching him, were sufficient to warrant the officer believing that a felony had been committed. Cf. *United States v. Williams,* 219 F. Supp. 666 (S. D. N. Y. 1963); *Newcomb v. United States,* 327 F. 2d 649 (C. A. 9th 1964); *Green v. United States,* 259 F. 2d 180 (D. C. C. 1958), *cert. den.* 359 U. S. 917 (1959).

Notwithstanding the fact that the informer had given information to the police on only one other occasion and denied having given the police any information on this occasion, there was still sufficient probable cause to make the arrest. Under the circumstances, even if the holding in *Wong Sun v. United States, supra,* is applicable in a state prosecution, it is clear that the coincidental search of the person of the defendant and the seizure of heroin from him were not unlawful, and we so hold.

(ii)

Relying on *Robinson v. California,* 370 U. S. 660 (1962), the defendant also contends that the trial court erred in refusing to admit proffered medical testimony purporting to show that narcotics addiction is an incurable disease and thereby preventing argument that punishment as a subsequent offender constituted cruel and unusual punishment. The proffered testimony was properly excluded for the simple reason that it was not relevant.

In Maryland narcotics addiction is not a crime, and the defendant was not prosecuted for being an addict. Instead, he was tried and convicted of a violation of Code (1957), Art. 27, § 277, which prohibits one from manufacturing, possessing, controlling, selling, prescribing, administering, dispensing, or

compounding any narcotic drug unless authorized by law to do so, and it is for possessing and controlling narcotics that the defendant is being punished. While the multiple offender statute, Code (1964 Supp.), Art. 27, § 300, applies to addicted and nonaddicted alike, it does not, as the defendant claims, punish one for being an addict. Moreover, despite the apparent election of the defendant to ignore it, the law provides for the treatment, care and confinement of one charged with the commission of a criminal offense "who is habitually addicted to the use of narcotic drugs as that term is defined in § 276 of Article 27." Code (1964 Supp.), Art. 16, § 49. This statute does not make narcotics addiction a crime, nor is it punitive in nature.

The *Robinson* case, holding that a California statute that punished one for drug addiction was in violation of the constitutional guarantee against cruel and unusual punishment, is clearly distinguishable from the present case. There the statute in question specifically made it unlawful for a person to be addicted to the use of narcotics. In Maryland, as we have seen, there is no statute making addiction a crime.

(iii)

The final contention of the defendant, that his punishment as a third offender was unlawful, is likewise without merit. When a greater penalty is imposed for a subsequent offense than for a first offense, the punishment is for a new or different crime as distinguished from an old or prior offense. A subsequent offender statute is prospective in operation, is not retroactive, and is constitutional. *Beard v. State,* 216 Md. 302, 140 A. 2d 672 (1958), *cert. den.* 358 U. S. 846 (1958). See also *Garrigan v. Superintendent,* 218 Md. 662, 146 A. 2d 431 (1958); *Taylor v. Warden,* 213 Md. 646, 131 A. 2d 720 (1957).

Nor does the fact that a violation of the narcotic drugs statute, which was formerly a misdemeanor, has been made a felony, require that punishment as a subsequent offender can only be imposed when the prior convictions were also for felonies. While the statutes in some jurisdictions may require that the subsequent conviction should be for an offense of the

same character and grade as the previous convictions, see 24B, C. J. S., *Criminal Law*, § 1960(3), it is clear that the Maryland statute (§ 300 of Art. 27) has no such requirement. Under the broad language of this statute, which imposes no restriction on either the character or grade of the previous conviction for an offense relating to narcotic drugs or on the length of the sentence imposable, it is immaterial whether the prior convictions were for a misdemeanor or for a felony. *Gans v. Warden*, 233 Md. 626, 196 A. 2d 632 (1964). See also *Rodriguez Salgado v. United States*, 277 F. 2d 653 (C. A. 1st 1960).

*Judgment affirmed.*