Raymond V. **FOREMAN**

v.

**WARDEN, MARYLAND PENI-
TENTIARY.**

**Civ. A. No. 14549.**

United States District Court
D. Maryland.

May 6, 1965.

Calvin L. Bowers (court-appointed), Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen., of Maryland, and Franklin Goldstein, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Petitioner (Foreman) was indicted in the Circuit Court for Frederick County for burglary of the home of Miss Norma Pauline Etzler, in Frederick, on December 18, 1961. Represented by counsel of his own choosing, he elected to be tried by the Court (Schnauffer, C. J.), was found guilty, and was sentenced to a term of six years.

No appeal was taken from the conviction and sentence, but a petition for relief under the Post Conviction Procedure Act, Anno. Code of Md., Article 27, section 645A–J, was filed and heard by Judge Moorman. In that petition Foreman was represented by counsel and raised substantially the same points which are raised in the present petition for a writ of habeas corpus. Judge Moorman granted a full and fair hearing, at which testimony was taken. He filed a memorandum opinion and order finding the historical facts on most of the points, as well as deciding all of them adversely to petitioner. His findings of historical facts will be accepted by this Court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Davis v.

State of North Carolina, 4 Cir., 310 F.2d 904 (1962); Near v. Cunningham, 4 Cir., 313 F.2d 929 (1963); Outing v. State of North Carolina, 4 Cir., 344 F.2d 105 (April 5, 1965).

Foreman claims:

(1) Illegal arrest. Judge Moorman made no findings of fact on this point, and it will be discussed below.

(2) Suppression of evidence of a mold of a shoe print. Judge Moorman made findings of fact on this point, which are accepted by this Court and show that the point is without merit.

(3) That the police (a) caused one witness to commit perjury, and (b) failed to investigate suspects whose names were suggested to them by Foreman. Judge Moorman made findings of fact with respect to (a), which are accepted by this Court and show that that point has no merit. (b) The testimony of Chief Main, of the Frederick police, at the hearing on the pending petition shows clearly that the police investigated fully all suspects brought to their attention by Foreman. Some of Foreman's testimony on this point was incredible; both Judge Moorman and this Court found that Foreman is not a credible witness.

■ (4) That Foreman was given four lie detector tests even though he only signed for one. Again, the Court will accept the historical findings of Judge Moorman, with the additional note that the so-called four tests were four series of questions presented successively and that Foreman was taken to the polygraph room on only one occasion. He himself had asked for the test. The point is without merit.

■ (5) That the prosecuting witness was not cross-examined. Foreman still insists that the witness was not cross-examined despite the evidence of the transcript to the contrary. The cross-examination was brief, because Foreman's trial counsel evidently hoped to show that the technical requirements of burglary had not been proved and did not want to give the witness a chance to add anything on cross-examination to

what she had testified on direct. The failure of this strategy does not prove incompetency. Snead v. Smyth, 4 Cir., 273 F.2d 838 (1959); Brown v. Pepersack, 4 Cir., 334 F.2d 9 (1964).

### The Arrest Point

Foreman contends that he was arrested without a warrant, to his prejudice, in that evidence of Miss Etzler's identification of him in the police station was admitted at his trial. Respondent suggests that under a recent Maryland decision Foreman was "accosted" on the street and was not arrested until after he was identified at the station by Miss Etzler; but respondent's principal contention is that the police had probable cause to arrest Foreman for the burglary at the time he was accosted, picked up and taken to the station.

### Findings of Fact

Immediately after the burglary, which occurred at about 9:30 p. m. on December 18, 1961, Miss Etzler saw the man she believed to be the burglar run down an alley beside the house and pursued him for a short distance. She noticed that he was a Negro, about 5' 10" tall, with a large mustache and a goatee, wearing a dark cap and a tweed overcoat. She called the police; Chief Main responded promptly, and summoned Detective Lt. Dietz and Sgt. Carty. Frederick is a city of some 20,000 people, most of whom the police know personally. It has a relatively small Negro population, and when Miss Etzler gave the police a description of the man she had seen, Lt. Dietz and Sgt. Carty believed he was probably one of two men who fitted the description and who were known to the police, namely, Frank Hackey and Foreman. Hackey was brought to Miss Etzler's house that night, but she said that he was not the man. A day or two later she was shown pictures of a number of men and stated that Foreman's picture, taken six years before, looked like the man she had seen except that the man she had seen had a much larger mustache.

The police observed Foreman for several days; they saw him wearing a dark

cap on one occasion and wearing a tweed overcoat on another. About noon on December 22 Foreman was in a tavern and pool hall on All Saints Street. Sgt. Carty asked him to step out and speak to Lt. Dietz, who told Foreman that he was suspected of the burglary and asked him to come down to the police station. According to the testimony of both Foreman and the police, Foreman offered no objection but voluntarily got into the back seat of the officers' car. Both of the officers rode in the front seat. At their request, but again with no objection, Foreman went into his house on the way to the station and got his tweed overcoat. Meanwhile, Miss Etzler was notified and came to the police station during her lunch hour and sat in the Chief's office, facing the door, while, at the instruction of the officers, Foreman walked across the hall, dressed in his cap and overcoat, and spoke to a policeman at a counter. Miss Etzler promptly and positively identified Foreman. An arrest warrant was immediately obtained from a magistrate, and Foreman was formally placed under arrest at 1:30 p. m., was taken before a magistrate, and was released on bail the following day.[1] Miss Etzler also positively identified Foreman at the trial, and the only prejudice claimed to follow from his allegedly illegal arrest was the fact that Lt. Dietz testified at the trial that Miss Etzler had identified Foreman at the station. In view of the fact that the case was tried before a judge without a jury, the prejudice, if any, is very slight, but that point need not be decided.

In the recent case of McChan v. State, Md., 207 A.2d 632 (1965), the Court of Appeals of Maryland said:

"The invariable rule is that a police officer without a warrant lacks authority to make an arrest in a felony case unless he has reasonable grounds or probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested had committed the offense. Murray v. State, 236 Md. 375, 203 A.2d 908 (1964); Young v. State, 234 Md. 125, 198 A. 2d 91 (1964); Edwardsen v. State, 231 Md. 332, 190 A.2d 84 (1963); Mulcahy v. State, 221 Md. 413, 158 A.2d 80 (1960). As was pointed out in Young, 234 Md. at p. 129, at p. 93 of 198 A.2d (as well as in Edwardsen and Mulcahy), reasonable grounds or probable cause 'exists when the facts and circumstances within the knowledge of the officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious man believing that a felony had been committed.' Necessarily therefore, the question as to whether or not a person was lawfully arrested depends on the facts and circumstances in each case.

"An arrest has been defined as 'the detention of a known or suspected offender for the purpose of prosecuting him for a crime.' Cornish v. State, 215 Md. 64, 67, 137 A.2d 170, 172 (1957). As that case points out there is a detention only when there

1. The arrest record contains several boxes to be filled in: one headed "Time arrested", and another "Place arrested". The time of arrest was given at 1:30 p. m., the time when Foreman was in fact arrested in the police station. The place of arrest was given as "West All Saint". The officer said that the latter entry was made because that was where Foreman was accosted and that this is their regular custom since there is no separate box for place accosted as distinguished from place arrested. Under the rule stated by the Court of Appeals of Maryland in McChan v. State, Md., 207 A.2d 632 (1965), it is extremely difficult for police to be sure in certain cases whether they are arresting or merely accosting an individual, but the State should consider a possible modification of the customary arrest record so that the police can state contemporaneously whether they believe that a man was arrested or merely accosted before he was brought to the station.

is a touching by the arrestor or when the arrestee is told that he is under arrest and submits. Where there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative, for in order for there to be an arrest in such case, there must always be an intent on the part of one to arrest the other and an intent on the part of such other to submit. When one is approached by a police officer and merely questioned as to his identity and actions, this is only an accosting and not an arrest. See also Kauffman, The Law of Arrest in Maryland, 5 Md.L.Rev. 125, 131; 5 Am.Jur.2d, Arrest, § 1; 6 C.J.S. Arrest § 1." 207 A.2d 637–638.

In that case, where a police officer had spoken to a man who was running away from the scene of an attempted hold-up and suggested that he retrace his steps, the Court of Appeals said:

"We think this was no more than an accosting and that the appellant was not placed under arrest until he was taken to the hospital and placed under police guard. At no time was there a touching and he was never told that he was under arrest. While he may have thought that he was under arrest when he was stopped and returned to the scene at the suggestion of the officer, he was not actually arrested until he was taken to the hospital to be treated for his injuries. See Cornish v. State, supra." 207 A.2d at 640.

■■■ In the instant case, the state courts have not passed on the question whether Foreman was "accosted" or arrested on the street. Under all the evidence, this Court concludes that he was arrested on the street. This Court further finds that the police had probable cause to arrest Foreman at that time. Miss Etzler had stated that his picture looked like the man she had seen except for the size of the mustache; the police knew that Foreman was then wearing a much larger mustache than he had worn

when the picture was taken; they knew Foreman fitted Miss Etzler's description with respect to size; through observation they had learned that he also owned and sometimes wore a dark cap and a tweed overcoat. As Judge Boreman, speaking for the Fourth Circuit, said in Ralph v. Pepersack, 335 F.2d 128 (1964):

"We turn first to the question of probable cause for arrest. The existence of 'probable cause' is to be determined by the application of a practical, not a technical, standard. The meaning of the phrase has been so frequently stated as to require little elaboration here. See, e. g., Ker v. California, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726 (1963); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Peisner, 311 F.2d 94, 104 (4 Cir. 1962). Probable cause is something more than mere suspicion and something less than evidence which would justify a conviction. The essence of all definitions of probable cause for arrest is reasonable ground for belief that a crime has been committed and that the person arrested committed it. Brinegar v. United States, supra, 338 U.S. at 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, supra, 267 U.S. at 161, 45 S. Ct. 280, 69 L.Ed. 543. However, in determining the existence of probable cause a standard is much more easily stated than applied. No single litmus-paper test will provide the answer when probable cause is at issue; we look instead to the totality of the circumstances. * * * Our inquiry is whether their action was that of reasonable and prudent police officers in view of the circumstances as they appeared at the time of arrest. * * *" 335 F.2d at 132.

Applying that test, the police were justified in arresting Foreman on the street when they did. The arrest is not made

invalid by the fact that he would probably have been released if Miss Etzler had stated, after seeing him, that he was not the man. The interests of the accused, as well as the interests of the public, are served by reasonable police investigation before a man is formally charged with crime. Ralph v. Pepersack, supra, at 133–137. See also Haynes v. State of Washington, 373 U.S. 503, at 515, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

The relief prayed is hereby denied and the petitioner is remanded to the custody of respondent.

