# PERCY ANDY MORTON *v.* STATE OF MARYLAND

[No. 29, September Term, 1978.]

*Decided March 7, 1979.*

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Victoria A. Salner, Assistant Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. COLE, J., filed an opinion concurring in part and dissenting in part at page 535 *infra.*

The appellant Morton was convicted at a nonjury trial of robbery with a deadly weapon and a related handgun count. On appeal he contended that the trial court erred in admitting

in evidence (a) an inculpatory statement taken from him following his arrest and (b) tangible items seized during a warrantless search of his property. The Court of Special Appeals affirmed the convictions in an unreported per curiam opinion.[1] We granted certiorari to consider the admissibility of the challenged evidence.

The evidence at trial showed that on the night of December 13, 1974, two men, each brandishing a gun, robbed cabdriver Gary Sawyer. One of the robbers, Kenny Lathan, was apprehended by police as he was fleeing from the scene; the other escaped.

The day following the robbery, Officer Herbert Rice received "information" from a pharmacist as a result of which he stopped and frisked the appellant, who at that time was wearing a black jacket and carrying a plastic bag. Finding nothing, the officer told the appellant he was free to leave. Rice nevertheless instructed other officers to keep the appellant under observation. Shortly thereafter, Rice received "information" from another police officer that there was "good reason to believe" that the appellant "may have been wanted." Rice promptly directed other police officers to surround a neighborhood recreation center that appellant had been observed to enter. Rice confronted the appellant inside the recreation center and told him "that he may have been wanted for something." He told the appellant to accompany him and to bring his possessions, including the black leather jacket which appellant had been wearing and the plastic bag which he had been carrying when Rice first accosted him. The appellant told the officer that he had given the jacket and bag to his cousin who had left the recreation center. Rice's information was that no one had left the recreation center since the appellant had entered it.

Rice put the appellant in a patrol car with another officer and returned to the recreation center to search for the jacket and bag. He discovered these items lying on the floor of the basketball room "away from everybody," this being a room different from that in which the officer

---

1. Percy Andy Morton v. State of Maryland, No. 942, September Term, 1977.

initially located the appellant. Rice searched the jacket and bag; he found and seized a handgun and a quantity of marijuana which were inside the bag, along with photographs of the appellant.

Rice then returned to the patrol car and advised the appellant that "he was under arrest." The appellant was taken to Police Headquarters and placed in a juvenile detention room for several hours under guard. Thereafter, he was given *Miranda* warnings and interrogated about the cab robbery. He gave an incriminating statement admitting that he and Kenny had held up a cabdriver.

At trial, the appellant objected to the admission of the incriminatory statement, without stating his reasons. The trial judge did not ask the appellant to state the reason for his objection, but instead initiated inquiry into the voluntariness of the confession and whether it comported with *Miranda* standards. After hearing evidence as to these issues, the trial judge overruled the objection and the incriminating statement was introduced. The appellant also objected to the admission of the gun and the marijuana in evidence on the ground that these items were illegally seized. The objection was overruled.

The Court of Special Appeals held that the arrest did not occur until after Rice seized the gun and marijuana from the plastic bag and that the arrest was therefore lawful. It found no merit in appellant's contention that his inculpatory statement was inadmissible as being the fruit of an illegal arrest, first because the issue had not been raised at the trial, and second because the arrest in any event was lawful. As to the admission of the items seized from the plastic bag, the Court of Special Appeals found them properly admissible, stating:

> "The gun was seized by Officer Rice from a plastic bag found in a remote section of the basketball area at the recreation center. The plastic bag was under the control of no one. The basketball area was in a section of the recreation center different from the

area [in which] the appellant was located. Appellant told Rice that he gave the plastic bag to his cousin who had left the area. This turned out to be untrue as verified by Rice's testimony that no one had entered or left the center prior to appellant's entering and leaving this area. The entire recreation center was open to the general public. Officer Rice had a right to enter this area. This was not a 'constitutionally protected area' as contemplated by the Fourth Amendment.

"In a review of the facts of this particular case, it is clear that the appellant had no legitimate expectation of privacy in the articles seized by Officer Rice. The gun was properly admitted into evidence by the trial court and therefore we find no merit in appellant's contention on this issue."

In essence, it was the conclusion of the Court of Special Appeals that appellant had abandoned the jacket and the plastic bag and, as a consequence, the police search and seizure of these items did not violate the Fourth Amendment.

We think it clear that the appellant was arrested when Rice removed him from the recreation center and placed him under guard in the police patrol car. We said in *Bouldin v. State,* 276 Md. 511, 350 A. 2d 130 (1976), that an arrest is the taking, seizing or detaining of the person of another, *inter alia,* by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest. On the record before us, Rice's manual seizure of the appellant and the subsequent restraint of his liberty plainly constituted an arrest, there being nothing to show that the appellant voluntarily consented to the restrictions placed upon his freedom by the arresting officer.

It is equally clear that the record does not show any lawful basis for the warrantless arrest at the time it was made. *See, e.g., Gilmore v. State,* 263 Md. 268, 283 A. 2d 371 (1971). All the evidence discloses is that Officer Rice had unparticularized information giving rise to a suspicion that

the appellant was guilty of an unspecified crime. That this is a wholly inadequate evidentiary foundation upon which to justify a warrantless arrest could not be more apparent. *See, e.g., Edwardsen v. State,* 231 Md. 332, 190 A. 2d 84 (1963). Accordingly, the arrest being patently illegal, the seizure of the items from the plastic bag could not be justified as a search incident to a lawful arrest.[2]

The only theory upon which the items seized from the plastic bag could possibly have been admitted in evidence consistent with fourth amendment guarantees was that of abandonment. The basic concern of the fourth amendment is to protect the privacy of one's property against arbitrary intrusion by governmental officials. *Duncan and Smith v. State,* 281 Md. 247, 378 A. 2d 1108 (1977). Thus, if a person voluntarily discards or otherwise relinquishes his interest in property so that he no longer retains a reasonable expectation of privacy with regard to it, he has removed himself from the protection of the fourth amendment. *State v. Boone,* 284 Md. 1, 393 A. 2d 1361 (1978); *Venner v. State,* 279 Md. 47, 367 A. 2d 949, *cert. denied,* 431 U. S. 932 (1977); *Everhart v. State,* 274 Md. 459, 337 A. 2d 100 (1975). In other words a search of abandoned property is not a "search" within the protection of the fourth amendment because it does not encroach upon the privacy upon which one may justifiably rely. *Cf. Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967); *Smith v. State,* 283 Md. 156, 389 A. 2d 858 (1978).

Whether property has been "abandoned is generally a question of fact based upon evidence of a combination of act and intent." *Everhart v. State, supra,* 274 Md. 483. Intention is a prime factor in considering whether there has been an abandonment; it is to be ascertained from what the actor said and did since intent, although subjective, is determined from objective facts at hand. *Duncan and Smith v. State, supra; Everhart v. State, supra.* Accordingly, while a brief relinquishment of possession or control over property would

---

2. Even if the arrest were lawful, the search could not be justified as incident thereto since the jacket and bag were not within the reach of the arrestee at the time of the arrest. *See* Chimel v. California, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969).

not ordinarily constitute an abandonment, the question necessarily turns in each case upon whether the complaining party retained a reasonable expectation of privacy in the articles alleged to be abandoned. *Venner v. State, supra.* As we said in *Duncan and Smith v. State, supra,* "the expectation of privacy . . . is at the heart of the test for abandonment." 281 Md. at 262.

Applying these principles in *Duncan and Smith,* we held that the appellants there could not contest a warrantless search and seizure of an automobile because they had manifested an unequivocal intent to abandon the vehicle. In that case, police questioning had elicited repeated denials of any connection with the automobile, and we said that the appellants' answers showed conclusively that they abandoned any right to object to the search. Moreover, we held that "by what they said" the appellants "surrendered any expectation of privacy" in the automobile. 281 Md. at 266.

Similarly, in *Venner,* we upheld the warrantless seizure of the stools of a hospitalized suspect because he could not have had a reasonable expectation of privacy "in human excreta for the simple reason that human experience is to abandon it immediately." 279 Md. at 59.

Our earlier decision in *Matthews v. State,* 237 Md. 384, 206 A. 2d 714 (1965), is consonant with these principles. In that case, we held that since Matthews had been observed discarding three envelopes under a car parked on a public street, it was proper for a police officer to retrieve the evidence because "in a very real sense the [envelopes] were thrown away and therefore abandoned." *Id.* at 387. In short, Matthews' overt actions evidenced an intent to abandon any reasonable expectation of privacy in the discarded materials. *See Hester v. United States,* 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924); *Henderson v. Warden,* 237 Md. 519, 206 A. 2d 793 (1965).

In *Boone,* we declined to invoke the doctrine of abandonment to justify the warrantless seizure of certain stolen credit cards. There, a police officer seized the credit cards while lawfully in an apartment to execute a warrant of restitution for nonpayment of rent. We acknowledged that

the tenant, by omitting to pay rent, forfeited any right to have his personal property remain in the apartment. We rejected, however, the argument that the tenant's omission to pay rent coupled with nonredemption prior to eviction and non-presence at the time of eviction, amounted to an abandonment of the personal property in the apartment. We concluded that the appellant "did not relinquish his right to the [credit cards] or to a reasonable expectation of privacy therein." 284 Md. at 8.

We think the appellant had a reasonable expectation of privacy in the contents of the jacket and plastic bag while he was inside the recreation center, and that nothing which he said or did evidenced an intent to abandon his protected privacy interest in these belongings. We hold that the appellant's fourth amendment claim to privacy from governmental intrusion was reasonable and that the search of the jacket and plastic bag was unlawful.

The contrary conclusion reached by the Court of Special Appeals appears to have been predicated on the appellant's lack of immediate "control" over the jacket and plastic bag, and the public nature of the recreation center. That an owner of personal property may have a reasonable expectation of privacy, despite the absence of immediate control or physical possession, would seem clear. *See Mancusi v. DeForte,* 392 U. S. 364, 88 S. Ct. 2120, 20 L.Ed.2d 1154 (1968); *State v. Boone, supra.* Similarly, the private or public nature of the physical surroundings in which the claim to privacy is asserted is not dispositive. As the Supreme Court said in *Katz v. United States*:

> "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. . . ." 389 U. S. at 351-52.

Persons who avail themselves of the facilities at a public recreation center and place their belongings on the sidelines of a basketball court do not, without more, forfeit the

legitimate expectation that those belongings will remain undisturbed, free from unreasonable governmental intrusion. To otherwise conclude would, we think, be plainly at odds with that which society would recognize as an entirely reasonable expectation of privacy.

There is nothing in the record to indicate that the appellant terminated or otherwise abandoned his right of privacy in the jacket and the plastic bag. This is not a case in which an inference of abandonment is justified by the condition of the items alleged to be discarded, or from their location, or from the duration of time the items had purportedly been abandoned. *Compare Matthews v. State,* 237 Md. 384, 206 A. 2d 714 (1965), and *Smith v. State,* 510 P. 2d 793 (Alas. 1973) with *Rios v. United States,* 364 U. S. 253, 80 S. Ct. 1431, 4 L.Ed.2d 1688 (1960). That the jacket and plastic bag were discovered in a section of a room "remote" from that in which the appellant was initially accosted by Officer Rice does not support an inference that they had been abandoned. Indeed, the record wholly fails to demonstrate that the appellant, by actions or words, intended to abandon or relinquish his constitutionally protected expectation of privacy in the seized items. Officer Rice witnessed no overt act of discard by appellant. *Matthews v. State, supra.* Similarly, the appellant did not disclaim his interest or connection with the seized items as in *Duncan and Smith.* Rather, he told Officer Rice that he had given these items to his cousin. Even if the appellant's response was not truthful, that fact, in conjunction with his brief relinquishment of possession, is not sufficient evidence from which to infer an abandonment.

The admission into evidence of the fruits of the warrantless search and seizure constituted prejudicial error requiring that the judgments of conviction be reversed. Consistent with our holding in *Boone,* we shall remand for a new trial since, as we there said, "a retrial is not constitutionally proscribed when judgment is reversed on an appellate court's determination that evidence was erroneously admitted, even though without that evidence the trier of fact could not convict." 284 Md. at 17.

In view of our disposition of the appeal, we need not

consider whether appellant's incriminating statement should have been excluded from evidence under *Brown v. Illinois,* 422 U. S. 590, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975), as constituting the fruit of an illegal arrest, based solely on his general objection to the statement's admissibility. Whether the incriminating statement is properly admissible depends on the evidence adduced upon remand.

> *Judgments reversed; case remanded*
> *for a new trial; costs to be paid by*
> *the Mayor and City Council of*
> *Baltimore.*

*Cole J., concurring in part and dissenting in part:*

While I concur in the majority opinion insofar as it holds that the judgment below must be reversed because the accused was illegally arrested and searched, I do not agree that a new trial is warranted. I believe that the holding of the Supreme Court in *Burks v. United States,* 437 U. S. 1, 98 S. Ct. 2141, 57 L.Ed.2d 1 (1978), is controlling and militates against the granting of a new trial in this case.

Contrary to the majority, I would consider Morton's contention that his incriminating statement was improperly admitted into evidence. I believe that Morton's statement was inadmissible as the "fruit of the poisonous tree" under *Brown v. Illinois,* 422 U. S. 590, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963); and the decision of this Court affirming Judge Orth's opinion for the Court of Special Appeals in *State v. Ryon,* 278 Md. 302, 363 A. 2d 243 (1976), *aff'g Ryon v. State,* 29 Md. App. 62, 349 A. 2d 393 (1975). There is simply no evidence in the record of this case that anything operated to attenuate the connection between Morton's arrest and statement so as to dissipate the taint of the primary illegality.

The majority refuses to consider this issue, and understandably so, for when the items seized *and* the incriminating statement are excised from the record due to their inadmissibility, the remaining evidence is insufficient to

sustain Morton's conviction, and under *Burks* a retrial would violate the Double Jeopardy Clause. The *Burks* Court held that "the Double Jeopardy Clause precludes a second trial once a reviewing court has found the evidence legally insufficient, [and] the only 'just' remedy available for [the] court is the direction of a judgment of acquittal." *Burks, supra,* 437 U. S. at 18.

Remanding these proceedings for a new trial subjects the accused to double jeopardy. I must, therefore, respectfully dissent.