776 A.2d 700

**Marvin POWELL**

v.

**STATE of Maryland.**

**No. 2321 Sept. Term, 2000.**

Court of Special Appeals of Maryland.

July 10, 2001.

584

586

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant

Jason F. Trumpbour, Staff Attorney (J. Joseph Curran, Jr., Attorney General, Ann N. Bosse, Assistant Attorney Generak and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Argued before DAVIS, HOLLANDER and WILLIAM W. WENNER (Retired, Specially Assigned), JJ.

HOLLANDER, Judge.

In this appeal, we focus on the status of a brown paper bag that was searched by police after it was placed at the curb of a

public street in Baltimore City by Marvin Powell, appellant. Appellant vigorously maintains that he did not abandon the bag, and therefore he contends that the police unlawfully searched it. Accordingly, he challenges the order of the Circuit Court for Baltimore City, denying his motion to suppress the cocaine recovered from the bag.

This case arises from a covert drug surveillance operation conducted by the Baltimore City Police Department on the evening of January 1, 2000. During the surveillance, the police saw appellant carefully place a brown paper bag near the curb of a public street. From the circumstances of appellant's conduct, the police suspected that the bag contained narcotics. Members of a police team briefly stopped appellant while the bag was searched, and recovered 34 brown glass "jugs" of suspected crack cocaine, later determined to consist of 116.65 grams of cocaine.

The court found that the bag was not abandoned. Moreover, the court concluded that the seizure of appellant constituted an arrest. Nevertheless, the court denied appellant's suppression motion, because it found that the arrest was supported by probable cause. Thereafter, a jury convicted Powell of possession with intent to distribute cocaine, for which he was sentenced to twelve years of imprisonment.

On appeal, Powell poses one question for our consideration: Whether the lower court erred in denying the motion to suppress.

In our view, this case illustrates the sometimes critical distinction between the concept of abandonment as that term is used in property law, and the overarching principle of reasonable expectation of privacy that is central to Fourth Amendment analysis. As we see it, even if appellant did not intend to abandon the paper bag, thereby retaining a property interest in it, he had no reasonable expectation of privacy in the bag. Therefore, for purposes of Fourth Amendment analysis, the bag was abandoned. Accordingly, although we do not agree with the trial court's reasoning in denying the motion to suppress, we shall affirm, because we are satisfied

that the court reached the correct result.[1] *See Offutt v. Montgomery County Bd. of Educ.*, 285 Md. 557, 564 n. 4, 404 A.2d 281 (1979) (noting that "an appellate court may affirm a trial court's decision on any ground adequately shown by the record").

## FACTUAL SUMMARY—MOTION TO SUPPRESS

On September 12, 2000, the trial court held a hearing on appellant's motion to suppress the narcotics recovered from the brown paper bag. At the hearing, appellant asserted, *inter alia*, that the search and seizure of the bag was illegal, because appellant retained dominion and control over the paper bag, and thus did not abandon it. Moreover, Powell claimed that when the police stopped him moments after he put the bag on the ground, the stop constituted an arrest, for which the police lacked probable cause. The State countered that appellant abandoned the bag in the gutter of a public street and thus lacked standing to challenge the search. Alternatively, the State claimed that the stop was a lawful investigatory stop, but, even if it was an arrest, the police had probable cause.

Baltimore City Police Officer Parker Elliott was the only witness to testify. He was accepted by the court as an expert in "identification, packaging[,] and distribution patterns of controlled dangerous substances." The following testimony is relevant:

[PROSECUTOR]: [Officer Elliott] have you had any specialized training in controlled dangerous substance enforcement?

[OFFICER ELLIOTT]: I have.

[PROSECUTOR]: Can you describe this training, including the type and hours to the Court?

---

1. In view of our conclusion, we need not decide whether the stop amounted to an arrest, or whether the stop was based on probable cause.

[OFFICER ELLIOTT]: Basically it was identification of the narcotics and its packaging and identification of street level distribution and their patterns.

\* \* \*

THE COURT: And what did you learn in that 40 hours [of training]?

[OFFICER ELLIOTT]: Ma'am, basically identifying the narcotics and its packaging and its distribution patterns.

THE COURT: What do you mean, "distribution patterns"?

[OFFICER ELLIOTT]: Identifying what is done in a hand to hand transaction, what the transaction usually consists of, *how the narcotics are carried, how they stash them, where to find them* ....

(Emphasis added).

Officer Elliott testified that, at approximately 8:00 p.m. on January 1, 2000, he was conducting covert surveillance in the 1200 block of Bond Street from a rooftop location. Over the next forty-five minutes, Officer Elliott witnessed numerous drug transactions but made no arrests. At approximately 8:45 p.m., Officer Elliott observed appellant walking with a brown paper bag, about the size of a "softball," which was "cupped in his hand down to his side."

According to Officer Elliott, "[h]ands is [sic] important," and he "watch[es] hands." Further, the officer stated that "[i]t's known that narcotics are usually transported in brown paper bags." Based on his expertise, the officer said his attention was "drawn" to the paper bag in appellant's hand; the officer suspected that the bag contained narcotics.

The officer saw Powell look up and down the street several times. According to the officer, Powell then "very gently sat the bag down in the gutter right on the curb side and then stood up, looked right and left again and backed up. ..." The officer recounted that appellant "took a couple of steps back, looked back and forth as he was stepping back and just stepped back about two sets of steps, row house steps and then just stood there." At the time, Officer Elliott was

located approximately 30 yards from where appellant stopped. Although it was dark out, the area was illuminated by street lights, and Officer Elliott's view of appellant was not obstructed.

Further, the officer testified that when he saw appellant put the bag in the street, he did not believe appellant was merely discarding garbage. Nor did the officer believe that appellant "was abandoning" the bag, despite the fact that Powell "set" it "down" in the street. To the contrary, because appellant placed the bag on the ground "gingerly and gently as not to break something in it," the officer believed that such conduct showed that appellant was "still worried about the contents of that bag. . . ."

Officer Elliott added that, based on his experience, he would have "bet a paycheck" that the bag contained narcotics packaged in glass; he "believed there were jugs or vials in [the bag because of] the way it was set down because nobody's going to drop that amount of narcotics on the ground because it's going to break them." The officer explained:

Anybody that discards something throws it. I throw it. I think everybody throws it somewhere. [The paper bag] was very gingerly put down as to not break anything in it and I know from my training and expertise that it was probably glass in that bag, glass vials or jugs or what have you. That's how cocaine is packaged and he just set it down. And that was, instantly I saw that I was very sure, you know, other than that chemical analysis, that there was probably narcotics in that bag.

The State inquired of Officer Elliott as to why an individual would put a bag with drugs in the gutter of a public street. Officer Elliott replied: "Most people, through my training, don't want to get caught with that amount of narcotics on you because that's instant felony."

Based on the observations recounted above, and believing that the bag contained narcotics, Officer Elliott notified the arrest team by radio and instructed the officers to seize the bag and detain appellant "pending further investigation." The

evidence indicated that a total of five officers participated in the events at the scene. The record does not reveal whether the officers drew their weapons when they stopped appellant.

Officer Elliott acknowledged that he instructed the team to detain appellant before he knew the contents of the bag. The court asked the officer why one of the officers did not look in the bag first, to "see if it was narcotics and then place the Defendant under arrest?" The officer expressed his concern that appellant "could have been gone" if they had proceeded in the way the court suggested. Nevertheless, Officer Elliott maintained that appellant was not arrested when he was initially stopped, even though he was not free to leave. Officer Elliott insisted that until the narcotics were found, appellant was merely detained. The officer noted that Powell was not handcuffed, and it only took about 15 seconds to look in the bag, which was about five yards away from appellant.

 After a member of the arrest team notified Officer Elliott that the bag contained vials of suspected narcotics, Officer Elliott instructed the team to arrest appellant. The court asked: "What was your probable cause for stopping him?"[2] The officer responded:

My training and expertise of distribution patterns and the packaging of narcotics.... Due to the high level of distribution in that area that I watch on almost a nightly occasion, I've made numerous arrests in that area. I know the area well, I work it every day and I've seen narcotics transported in bags like that, large amounts of narcotics transported in bags like that numerous times. And from the actions of the

---

**2.** Of course, a lawful investigatory detention need not be supported by probable cause, so long as there is reasonable, articulable suspicion for the stop. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). As we said in *Jones v. State,* 132 Md.App. 657, 666, 753 A.2d 587, *cert. denied,* 360 Md. 487, 759 A.2d 231 (2000), it is well established that "every lawful detention within the contemplation of the Fourth Amendment is not *ipso facto* necessarily 'custody' ...," even though the event may constitute a seizure for Fourth Amendment purposes.

Defendant I had no doubt that there was either real or fake narcotics packaged in generally narcotics packaging material. I believed there was jugs or vials in it the way it was set down because nobody's going to drop that amount of narcotics on the ground because it's going to break them.

■ The circuit court ruled on September 13, 2000, that the paper bag was not abandoned by appellant, stating: "Let's just forget the abandonment right now. There's no evidence that [the bag] was abandoned.... The evidence showed that it wasn't abandoned, in fact." The court also said:

I think that part of the confusion in this case and the reason that both of you are all over the place in your argument is that, this is not actually a [m]otion to suppress tangible evidence but rather a motion to suppress an arrest. Standing is not an issue but if, in fact, we're talking about a [m]otion to suppress tangible evidence this Court finds that the Defense met its burden to demonstrate standing because *the evidence shows that this bag belonged to the Defendant and he had a reasonable expectation then of privacy.*[3]

(Emphasis added).

In its analysis, the court considered the character of the stop as "critical." The court concluded that, when the officers stopped appellant, he "was seized within the meaning of the Fourth Amendment ...," and probable cause was required to validate the stop. Although the court acknowledged a "fine line" between detention and arrest, it found that the stop constituted an immediate arrest, for which probable cause was required. The court reasoned:

---

3. The court's comments as to standing were in response to the State's assertion that appellant lacked "standing" to challenge the search of the bag. The judge indicated that she was "totally confused" by the prosecutor's comment, in light of the State's contention that appellant "was in possession of [the] drugs ...," and the fact that he was charged with drug possession. Indeed, the judge characterized as "ludicrous" the State's argument that appellant lacked standing. We agree that "standing" is not an issue here. *See Minnesota v. Carter,* 525 U.S. 83, 87–88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

[I]f the evidence had shown, for instance, that the arrest team had gone in an[d] asked Mr. Powell questions, had said what's your name? What are you doing here? Or made any inquiry, then I think the argument that he was, in fact, detained would be stronger and the only thing that we require is reasonable, articuable [sic] suspicion. But, in fact, they didn't—there's no testimony that they asked questions or what are you doing here? Or made any inquiry at all, but rather, put him under arrest. Now, in order to determine that you have to look at the surrounding circumstances. He's surrounded by a group of officers in uniform with weapons and he's told that he can't leave. In this Court's view that amounts to a seizure for purposes of the Fourth Amendment. What that means is that Off. Elliott has to have probable cause in order to, in fact, effectuate that arrest.

Nonetheless, the court upheld the search on the ground that the warrantless arrest was supported by probable cause. The court said:

The officer testified that he saw Mr. Powell gingerly place a bag on the ground, then stand, take a few steps back, [then] stand near it. It was New Year's Day. It was dark. There was no one else in his general area. The Defendant looked—Mr. Powell looked around and waited. Officer [Elliott] testified that it is his experience, he believed that that bag contained drugs and then—and the question is, is that adequate probable cause to make this arrest? And in the Court's view, based on the fact that the officer is an expert, he had sufficient articuable [sic] facts to justify his arrest of Mr. Powell and he believed reasonably that an offense was being committed in his presence and, therefore, I will deny Defense's Motion.

We shall include additional facts in our discussion.

## STANDARD OF REVIEW

Our review of the trial court's ruling with respect to a suppression motion "ordinarily is limited to information

contained in the record of the suppression hearing." *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519 (2000); *see Rowe v. State*, 363 Md. 424, 431, 769 A.2d 879 (2001); *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491 (1999); *State v. Fernon*, 133 Md.App. 41, 43, 754 A.2d 463 (2000). We review that evidence in the light most favorable to the prevailing party. *Stokes v. State*, 362 Md. 407, 414, 765 A.2d 612 (2001); *Charity v. State*, 132 Md.App. 598, 606, 753 A.2d 556, *cert. denied*, 360 Md. 487, 759 A.2d 231 (2000). Moreover, in reviewing the ruling of the trial court, we recognize that it is the trial court's function "to assess the credibility of the witnesses." *McMillian v. State*, 325 Md. 272, 282, 600 A.2d 430 (1992). In our review, we extend great deference to the fact-finding of the lower court, and accept the first-level facts as found by that court, unless clearly erroneous. *Ferris*, 355 Md. at 368, 735 A.2d 491; *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990), *overruled on other grounds by Wengert v. State*, 364 Md. 76, 89 n. 4, 771 A.2d 389 (2001); *Argueta v. State*, 136 Md.App. 273, 278, 764 A.2d 863 (2001).

■ Nevertheless, as to the ultimate determination regarding the legality of an arrest or search, we make our own independent, constitutional appraisal. We accomplish this task by reviewing the law and applying it to the facts that are not clearly erroneous. *In re Tariq A–R–Y*, 347 Md. 484, 488–89, 701 A.2d 691 (1997), *cert. denied*, 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998); *Jones v. State*, 343 Md. 448, 457–58, 682 A.2d 248 (1996); *see also Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (recognizing that appellate court must conduct independent, *de novo* review of ultimate question of whether there was reasonable, articulable suspicion to detain individual; findings of historical fact are reviewed only for clear error).

■ In this case, the trial court found that the bag was not abandoned, but did not articulate the facts on which it based its conclusion. As to the ultimate legal conclusion of questions such as whether the police had probable cause or articulable suspicion for a stop, or whether a defendant had a

reasonable expectation of privacy, we do not defer to the trial court's determination. Rather, we review these conclusions *de novo*. *See Ferris*, 355 Md. at 368–69, 735 A.2d 491; *Charity*, 132 Md.App. at 607–08, 753 A.2d 556; *Martin v. State*, 113 Md.App. 190, 236, 686 A.2d 1130 (1996) (recognizing *de novo* review concerning question of whether defendant had a reasonable expectation of privacy); *Sproates v. State*, 58 Md.App. 547, 563, 473 A.2d 1289 (1984) ("A trial court's determination that a reasonable expectation of privacy exists 'is a legal conclusion involving substantive Fourth Amendment analysis' subject to appellate review.") (citation omitted). We believe the same principles apply to whether the undisputed facts of this case amounted to an abandonment under the Fourth Amendment.

## DISCUSSION

■ We glean from appellant's brief his contention that the police had no right to search the paper bag unless it was either abandoned or the search was supported by probable cause. In Powell's view, his conduct and the attendant circumstances demonstrated that he did not abandon the paper bag, and the police lacked probable cause to search it. Powell also asserts that when the police stopped him, their action constituted an arrest, and that the arrest was illegal because it was unsupported by probable cause.

In furtherance of Powell's contention that he did not abandon the paper bag, Powell seems to rely on circumstantial evidence of his subjective intent, as well as the testimony of the police officer, who did not consider the bag abandoned. He also points to the trial court's finding that the bag was not abandoned, which he contends is a factual determination that was not clearly erroneous.

The State counters that appellant abandoned the paper bag, and thus had no reasonable expectation of privacy in it. Therefore, the State contends that the police officers were entitled to search the bag. Moreover, the State argues that the stop constituted a lawful investigatory detention rather

than an arrest. In any event, the State maintains that the seizure of appellant was supported by probable cause.

 Resolution of the issue before us requires that we determine whether appellant had a reasonable expectation of privacy in the paper bag under Fourth Amendment law. If appellant lacked a reasonable expectation of privacy in the bag, then the bag was abandoned for purposes of Fourth Amendment analysis, and the search of the bag was lawful. Once the search was made, the police clearly had probable cause to arrest Powell. On the other hand, if Powell retained a reasonable expectation of privacy in the bag, then it was not abandoned. In that circumstance, the validity of the search would depend on whether the police had probable cause to search the bag or arrest appellant. Although only reasonable, articulable suspicion is needed to conduct a lawful investigatory detention, sometimes called a "Terry stop" or a "stop and frisk," *see Terry v. Ohio, supra,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the pat-down search permitted as part of such a stop is "limited" to "outer garments to detect weapons" for the officer's safety. *Reynolds v. State,* 130 Md.App. 304, 321, 746 A.2d 422 (1999), *cert. denied,* 358 Md. 383, 749 A.2d 173, *cert. denied,* 531 U.S. 874, 121 S.Ct. 178, 148 L.Ed.2d 122 (2000). It would not extend to a bag that was not abandoned, if the bag was several feet away from the suspect and did not pose any threat to the safety of the officers or others.

 The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Mapp v. Ohio,* 367 U.S. 643, 646 n. 4, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), guarantees, *inter alia,* the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See Rosenberg v. State,* 129 Md.App. 221, 239, 741 A.2d 533 (1999), *cert. denied,* 358 Md. 382, 749 A.2d 173 (2000). The Fourth Amendment does not denounce all governmental searches and seizures, however. Rather, it protects the sanctity of the individual, as well as his property, from unreasonable and arbitrary governmental intrusions. *See Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114

L.Ed.2d 297 (1991); *McMillian,* 325 Md. at 281, 600 A.2d 430. As the Supreme Court has said, " '[t]he touchstone of [the] analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion.... " ' " *Maryland v. Wilson,* 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (citations omitted). The determination of whether a search is "unreasonable" requires a balancing of "the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Maryland v. Buie,* 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

 Subject to a few carefully delineated exceptions, warrantless searches are presumptively unreasonable. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Bell,* 334 Md. 178, 191, 638 A.2d 107 (1994); *Hardy v. State,* 121 Md.App. 345, 355, 709 A.2d 168, *cert. denied,* 351 Md. 5, 715 A.2d 964 (1998). Ordinarily, the State has the burden of proving the legality of a warrantless search and seizure. *Partee v. State,* 121 Md.App. 237, 259, 708 A.2d 1113 (1998). "When the justification offered is that the property was abandoned, the State must prove that the evidence was voluntarily abandoned and was not tainted by a Fourth Amendment violation." *Id.*

 The Supreme Court has recognized that the "application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Thus, "[t]he scope of the protection afforded by the Fourth Amendment is defined in terms of the individual's 'legitimate expectation of privacy.' " *Stanberry v. State,* 343 Md. 720, 731, 684 A.2d 823 (1996), *cert. denied,* 520 U.S. 1210, 117 S.Ct. 1692, 137 L.Ed.2d 819 (1997) (quoting *Smith,* 442 U.S. at 740, 99 S.Ct. 2577); *see Owens v. State,* 322 Md. 616, 625, 589 A.2d 59, *cert. denied,* 502 U.S. 973, 112 S.Ct. 452, 116 L.Ed.2d 470 (1991). When an alleged governmental search "does not intrude upon a legiti-

mate expectation of privacy, there is no 'search' subject to" the Fourth Amendment. *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); *see United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (stating that a "search" comes about "when an expectation of privacy that society is prepared to consider reasonable is infringed").

In *Bond v. United States,* 529 U.S. 334, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000), the Supreme Court noted that proper analysis under the Fourth Amendment embraces two discrete questions: "First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.' ... Second, we inquire whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Id.* at 338, 120 S.Ct. 1462 (quoting *Smith,* 442 U.S. at 740, 99 S.Ct. 2577) (alterations in original); *accord United States v. Simons,* 206 F.3d 392, 398 (4th Cir.2000); *Stanberry,* 343 Md. at 731, 684 A.2d 823; *Liichow v. State,* 288 Md. 502, 511, 419 A.2d 1041 (1980). The first question involves the defendant's subjective expectation, while the second concerns society's objective view of that expectation. *See Smith,* 442 U.S. at 740, 99 S.Ct. 2577.

 The Court of Appeals has articulated a similar two-part test to determine when Fourth Amendment protection applies. In *Venner v. State,* 279 Md. 47, 367 A.2d 949, *cert. denied,* 431 U.S. 932, 97 S.Ct. 2638, 53 L.Ed.2d 248 (1977), the Court said:

[F]irst ... a person [must] have exhibited an actual (subjective) expectation of privacy and, second, that ... expectation [must] be one that society is prepared to recognize as 'reasonable.'

*Id.* at 52, 367 A.2d 949 (quoting *Katz,* 389 U.S. 347 at 361, 88 S.Ct. 507 (Harlan, J., concurring)); *accord Stanberry,* 343 Md. at 731, 684 A.2d 823.

 Generally speaking, in Fourth Amendment analysis, the concepts of abandonment and lack of expectation of

privacy go hand in hand, as the proverbial two sides of the same coin. Indeed, in Fourth Amendment parlance, the term "abandonment" is often a shorthand reference for the concept of lack of expectation of privacy. As the Court recognized in *Stanberry,* 343 Md. at 731, 684 A.2d 823, "[b]y abandoning property, the owner relinquishes the legitimate expectation of privacy that triggers Fourth Amendment protection." *See Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *State v. Sampson,* 362 Md. 438, 447–48, 765 A.2d 629, *cert. denied,* —— U.S. ——, 121 S.Ct. 2202, 149 L.Ed.2d 1032, 2001 U.S. LEXIS 4007 (2001); *Morton v. State,* 284 Md. 526, 531–32, 397 A.2d 1385 (1979); *Duncan v. State,* 281 Md. 247, 261–62, 378 A.2d 1108 (1977); *Everhart v. State,* 274 Md. 459, 483, 337 A.2d 100 (1975) ("Without question, abandoned property does not fall within that category in which one has a legitimate expectation of privacy to bring it within the protection of the Fourth Amendment. . . ."); *Partee,* 121 Md.App. at 245, 708 A.2d 1113.

██ Even if an item is not abandoned as a matter of property law, however, it does not follow that a property owner necessarily retains a reasonable expectation of privacy in the item. This seems like just such a case. Applying the requisite Fourth Amendment analysis, the totality of circumstances compels the conclusion that appellant did not have a legitimate or reasonable expectation of privacy in the bag at the time that it was searched, regardless of any property interest that he may have retained.

To be sure, both the Supreme Court and the Court of Appeals have recognized a defendant's legitimate expectation of privacy in various containers that are not necessarily in the physical possession of the property owner at the time of a search. *See, e.g., Bond,* 529 U.S. at 338–39, 120 S.Ct. 1462 (recognizing expectation of privacy in canvas bag placed in overhead compartment of bus); *Stanberry,* 343 Md. at 738, 684 A.2d 823 (black suit bag on overhead rack of bus); *Owens,* 322 Md. at 630, 589 A.2d 59 (nylon bag with zipper closure and luggage tag bearing defendant's name and address left in

acquaintance's home); *Liichow,* 288 Md. at 512, 419 A.2d 1041 (plastic bag used to carry personal belongings); *Morton,* 284 Md. at 533, 397 A.2d 1385 (plastic bag left on gymnasium floor at a recreation center). The facts of this case, however, are markedly different from the ones cited above.

In *Stanberry,* for example, the Court considered the constitutionality of a search for narcotics conducted on a public bus during a "drug interdiction." *Id.* at 728, 684 A.2d 823. The Court concluded that the defendant did not abandon his garment bag, placed on an overhead rack of the bus, merely because he left the bag on the bus when he used the facilities at a rest stop. *Id.* at 740, 684 A.2d 823. Because no recognized exception to the warrant requirement applied to the search, the Court found the search unlawful. *Id.*

In the seminal case of *California v. Greenwood,* 486 U.S. 35, 37, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court recognized that an individual's Fourth Amendment rights were not violated when the police searched a person's trash container, placed for collection "outside the curtilage of a home." Significantly, it was not the location of the trash outside the curtilage that was controlling. Despite the location of the garbage, the Supreme Court recognized that the defendant "did not expect that the contents of [his] garbage bags would become known to the police or ... the public." *Id.* at 39, 108 S.Ct. 1625. Nevertheless, it concluded that the defendant lacked a "reasonable expectation of privacy" with regard to items that were "discarded." *Id.* at 41, 108 S.Ct. 1625. In reaching that conclusion, the Supreme Court recognized that the garbage was "readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id.* at 40, 108 S.Ct. 1625 (footnotes omitted). Moreover, the trash was placed at the curb "for the express purpose of conveying it to a third party, the trash collector...." *Id.*

The recent case of *State v. Sampson, supra,* 362 Md. 438, 765 A.2d 629, makes clear that the holding in *Greenwood* is not limited to those situations when property or trash is beyond the curtilage of a home. Rather, the paramount

question is whether the defendant had a reasonable expectation of privacy. In upholding the search of trash that was left for collection on the defendant's own property, the *Sampson* Court emphasized that resolution of these cases turns "less on the property concept of abandonment" and more on the question of whether the defendant "relinquished any reasonable expectation of privacy." *Id.* at 447, 765 A.2d 629. The Court concluded that such an "approach is entirely consistent with *Greenwood* and is the only reasonable one." *Id.* at 451, 765 A.2d 629. Writing for the Court, Judge Wilner said:

> The focus is on whether the person placed his or her trash, for collection, in an area at or near a public way or area, so that it was readily accessible to the public. If so, it matters not whether that area is technically within or without the boundary of the curtilage. As the North Dakota court stated in *State v. Herrick, supra,* 567 N.W.2d at 340, "[w]e will not engage in measuring expectations of privacy with a ruler." When dealing with trash set out for collection, making the perimeter of the curtilage decisive for Fourth Amendment purposes lacks any reasonable basis and would lead to wholly irrational results. Curtilage is a legal concept, not a surveying one. Most people probably have no idea what the word "curtilage" even means, much less where, on their property, it ends. Nor do they, as a practical matter, give a moment's thought to whether the place where they set their trash for collection is within or without this unmarked boundary.

*Id.* at 451–52, 765 A.2d 629 (alteration in original).

Numerous cases from other jurisdictions are to the same effect as *Sampson. See Sampson,* 362 Md. at 446–451, 446 n. 4, 765 A.2d 629 (collecting cases); *see,* e.g., *State v. Kimberlin,* 267 Kan. 659, 984 P.2d 141, 145–46 (1999) (upholding seizure of trash from a small ditch a few feet from street but within curtilage of home, because defendant had no reasonable expectation of privacy); *United States v. Hedrick,* 922 F.2d 396, 399–400 (7th Cir.), *cert. denied,* 502 U.S. 847, 112 S.Ct. 147, 116 L.Ed.2d 113 (1991) (recognizing that "mere intonation of curtilage ... does not end the inquiry," and upholding search

of trash bags kept on driveway for a week, 50 feet from house and 18 feet from public sidewalk, because trash was "readily accessible to the public" and thus defendant had no reasonable expectation of privacy). When the cases speak of abandonment in the context of a search of trash, it is evident that they are referring to the lack of a reasonable expectation of privacy. *See, e.g., United States v. Dela Espriella,* 781 F.2d 1432, 1437 (9th Cir.1986) (stating that warrantless search of garbage left at curb for collection does not violate Fourth Amendment because property was abandoned); *United States v. Vahalik,* 606 F.2d 99, 101 (5th Cir.1979), *cert. denied,* 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980) (placing garbage at curb for collection "is an act of abandonment which terminates any [F]ourth [A]mendment protection"); *United States v. Shelby,* 573 F.2d 971, 973 (7th Cir.) (concluding that placement of "trash in the garbage cans at the time and place for anticipated collection by public employees ... signifies abandonment," terminating any expectation of privacy), *cert. denied,* 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978).

▇▇▇▇▇ To be sure, "what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz,* 389 U.S. at 351–52, 88 S.Ct. 507. In *Stanberry,* the Court recognized the importance of the property owner's intent, stating:

> "Whether property has been 'abandoned is generally a question of fact based upon evidence of a combination of act and intent.' Intention is a prime factor in considering whether there has been an abandonment; it is to be ascertained from what the actor said and did since intent, although subjective, is determined from objective facts at hand."

*Stanberry,* 343 Md. at 732, 684 A.2d 823 (quoting *Morton,* 284 Md. at 531, 397 A.2d 1385)(internal citation omitted). Nevertheless, the *Stanberry* Court made clear that "[w]hile the owner's intent to abandon the property may be relevant in determining whether the owner had a reasonable expectation of privacy, subjective intent alone is not dispositive." *Id.* at

737, 684 A.2d 823. Writing for the Court, Judge Raker recognized that "[a]lthough the Fourth Amendment inquiry focuses on the property owner's actual expectation of privacy, a subjective question, courts must frequently rely on objective indications of the owner's intent." *Id.* at 732, 684 A.2d 823. Thus, "[i]ntent to abandon must ordinarily be assessed based on external manifestations, such as the owner's words and actions." *Id.* at 737, 684 A.2d 823.

The Court in *Stanberry* identified "a variety of objective factors to determine whether property is abandoned." *Id.* at 733, 684 A.2d 823. These factors include the location of the property and "whether the area [was] secured;" the length of time that the property remained in the location prior to the search; the condition of the property when it was searched; whether the owner asked a third party to "watch or protect the property;" and "whether the owner disclaimed or failed to claim the property when questioned by police." *Id.* The Court also emphasized the important difference between an affirmative disclaimer of ownership by a suspect and a "passive failure to claim one's property." *Id.* at 735–36, 684 A.2d 823. Courts may not infer "abandonment from the owner's failure to assert ownership of luggage in response to police questioning during a drug interdiction." *Id.* at 735, 684 A.2d 823.

As recounted earlier, in the dark of a January evening, on a public city street, appellant carefully placed a brown paper bag, about the size of a softball, in the area of the gutter or curb. Clearly, Powell had not been "seized" under the Fourth Amendment when he placed the drugs in the street. *See United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Ferris,* 355 Md. at 375, 735 A.2d 491. Then, Powell backed away from the bag, a distance equal to "about two sets of [row house] steps." Although all of the factors enumerated in *Stanberry* are not relevant to this case, when we consider the nature of the item, its location, and the ease of access to the bag, we readily conclude that appellant lacked a reasonable expectation of privacy in the paper bag.

To be sure, there is nothing inherent in a brown paper bag laying in the gutter or curb area of a public street in an urban area that signaled that it was the type of personal property in which one would reasonably expect to retain a privacy interest. In contrast to items such as a purse, clothing, jewelry, a suitcase, a backpack, a briefcase, a wallet, or other obviously personal or valuable items, the only reasonable inference is that the brown, softball-sized bag, from its appearance and location, resembled discarded trash. In contrast, if the bag had been in appellant's hand, the police could not have claimed that it was abandoned. But, appellant relinquished physical custody of it. Nor was there any evidence that ready access to the bag had been limited in some measure. Although appellant may have had the bag under his watchful eye, he walked away from it. Furthermore, unlike a remote country road, which might not be frequented by pedestrian traffic, there are many streets in an urban area where people are out and about between 8:00 p.m. and 9:00 p.m., which could make it difficult to secure the bag, and less reasonable to maintain an expectation of privacy.

Other factors are also noteworthy. Powell was not asked by police whether the bag was his, and he neither claimed nor denied ownership. The officer testified, however, based on his expertise, that a person with a quantity of drugs might place the bag in the street, as appellant did, to avoid getting caught with the drugs in his possession in the event of a police stop. In that way, the individual could disclaim any connection to the contraband. As the officer explained, a person apprehended with the bag that was recovered here would have an "instant felony." By placing the bag in the gutter in order to avoid getting caught with the drugs, Powell could not, on the one hand, have a legitimate expectation that he could deny dominion over the bag, and, in another context, simultaneously argue that his dominion should be recognized. *See California v. Hodari D.*, 499 U.S. 621, 623–24, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

Additionally, at oral argument, appellant's counsel acknowledged, in response to the Court's questions, that if Powell had

walked away from the bag, then "maybe" it was abandoned. The uncontroverted evidence at the hearing showed that appellant "took a couple of steps back" from the bag, a distance estimated at "two sets of steps, row house steps," and then "stood there."

In support of Powell's contention that he did not intend to relinquish control of the bag, appellant relies on Officer Elliott's testimony; the officer stated that he did not believe that Powell had abandoned the bag. Just as Powell's subjective intent is not controlling, we do not perceive the officer's view of what transpired as dispositive. *See Arkansas v. Sullivan*, 532 U.S. 769, ——, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994, 2001 U.S. LEXIS 4118, at *5 (2001) (per curiam) (reiterating that " 'subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis' ") (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)); *Herod v. State*, 311 Md. 288, 299, 534 A.2d 362 (1987); *Argueta, supra,* 136 Md.App. at 302, 764 A.2d 863 (stating that officer's "subjective intent" is not dispositive as to whether suspect was in custody, but is a factor to be considered under the totality of circumstances); *Rosenberg v. State,* 129 Md.App. 221, 241, 741 A.2d 533 (1999), *cert. denied,* 358 Md. 382, 749 A.2d 173 (2000).

In *Simpson v. State,* 121 Md.App. 263, 708 A.2d 1126 (1998), this Court observed: "We do not believe . . . that stashing drugs in another person's room gives the person who stashes the drugs an expectation of privacy that society regards as reasonable." *Id.* at 282, 708 A.2d 1126. In much the same way, we conclude that Powell did not have a privacy right in the bag that society would regard as reasonable. To the contrary, under Fourth Amendment analysis, we are satisfied that appellant lacked any reasonable expectation of privacy in the bag. Therefore, it was abandoned. Appellant agrees that if the bag was abandoned, the police were entitled to look inside it. When they did so, they clearly had probable cause to arrest appellant. Accordingly, appellant's motion to suppress lacked merit, and it was properly denied.

608

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.